**RicharD B. WALKER, Appellant**

v.

**Thomas P. ANDERSON and Lynn C. Anderson, Appellees.**

**No. 05–06–00025–CV.**

Court of Appeals of Texas, Dallas.

Aug. 29, 2007.

---

Dan E. Martens, Law Office of Dan E. Martens, Plano, TX, for Appellant.

Steven E. Clark, Clark, Ashworth & Milby, Dallas, for Appellee.

Before Justices WRIGHT, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

Richard B. Walker appeals the trial court's judgment awarding Thomas P. Anderson and Lynn C. Anderson actual

damages in the amount of $90,493 on their claims of fraudulent transfer pursuant to section 24.005(a)(1) of the Texas Uniform Fraudulent Transfer Act (TUFTA) and article 2.21, section A of the Texas Business Corporations Act.[1]

Walker raises twenty-one issues on appeal that generally argue the trial court erred when it: (1) found and concluded he did not prove his affirmative defense of the statute of repose; (2) concluded he did not prove his affirmative defense of res judicata; (3) found and concluded he fraudulently transferred funds from Mitchell & Walker Enterprises, Inc. d/b/a Dick Walker Custom Homes (M & W); (4) concluded article 2.21, section A did not require the Andersons to pierce the corporate veil to hold him individually liable; and (5) concluded the Andersons should be awarded attorney's fees and costs.

We conclude the trial court did not err when it found and concluded Walker did not prove his affirmative defense of the statute of repose and concluded he did not prove his affirmative defense of res judicata. Also, we conclude the trial court did not err when it found and concluded Walker fraudulently transferred funds from M & W and concluded the Andersons need not pierce the corporate veil to hold Walker individually liable. Finally, we conclude the trial court did not err when it concluded the Andersons should be awarded attorney's fees and costs. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Walker and Charles R. Mitchell formed M & W to construct homes. However, in 1989, Walker bought Mitchell's interest in M & W and became the sole shareholder and sole director for M & W.

During M & W's operation, Walker made shareholder loans to M & W because M & W had insufficient cash flow. These loans were not evidenced by promissory notes and there is nothing indicating the repayment terms. In 1988, Walker lent M & W $44,000 and in 1989, he lent M & W $181,339. In 1990, M & W made loan repayments to Walker totaling $33,207 and in 1991, M & W made loan repayments to Walker in the amount of $49,972. In 1992, Walker made another shareholder loan to M & W in the amount of $44,033.

In December of 1992, the Andersons entered into a contract with M & W to build a custom home on property located at 5412 Grassmere Drive, Plano, Texas. When the Andersons closed on their home in August of 1993, there were incomplete items and punchlist items, which M & W agreed to complete. M & W repaired some of the warranty items and completed some of the punchlist items, but not all.

In 1993, M & W made loan repayments to Walker in the amount of $57,336. Then, in 1994, M & W made additional loan repayments to Walker in the amount of $6,800 and again in 1995, in the amount of $22,500.

On April 3, 1995, the Andersons filed a small claims lawsuit against M & W alleging damages of $5,000 as a result of M & W's failure to complete the construction contract. *See Anderson v. Dick Walker Custom Homes,* No. CV–95–324 (Sm. Claims Ct., Precinct 3, Pl. 1, Collin County, Tex. Apr. 3, 1995). On October 31, 1995, the Andersons sued M & W for breach of contract, breach of warranty, and deceptive trade practices in county court. *See*

---

1. Article 2.21, section A of the Texas Business Corporation Act was recodified and is currently located at section 21.223 of the Texas For–Profit Corporation Law. *See* Tex. Bus. Orgs.Code Ann. § 21.223 (Vernon Supp.2006).

*Anderson v. Mitchell & Walker Enter., Inc.*, No. 1–577–95 (Co. Ct. at Law No. 4, Collin County, Tex. Oct. 31, 1995). Walker was not a party in either the small claims court or county court lawsuits. The small claims lawsuit was dismissed on December 11, 1995.

In 1996, Walker made an additional shareholder loan to M & W in the amount of $6,846. In 1997, M & W made repayment of the loans in the amount of $55,420. Then, in 1998, M & W made repayment of the loans to Walker in the amount of $50,983, which reduced the shareholder loans to zero, and paid Walker a dividend in the amount of $8,000.

On March 9, 1999, after Walker was deposed, the Andersons amended their lawsuit against M & W to include a claim for fraud based on misrepresentations and failure to disclose changes in material construction items, including an engineering variance. In 1998 and 1999, M & W paid Walker "unrecorded advances" totaling $31,500 against the profits or loans from M & W's revenues. In February of 1999, Walker incorporated Double Diamond Design. Walker was the sole shareholder and sole director. Although Double Diamond Design was originally established to develop condominium properties in Vail, Colorado, Walker used Double Diamond Design to construct residential homes and townhomes in the Austin and Dallas areas. Also, in mid–1999, Walker ceased doing business through M & W, although he did not file articles of dissolution. At this time, the Andersons' claims as alleged in their lawsuit were the largest outstanding claims against M & W.

The Andersons' suit against M & W was called to trial on June 5, 2000. M & W and its counsel failed to appear for trial. On June 6, 2000, the Andersons presented evidence of their claims and on June 12, 2000, the trial court entered a judgment in favor of the Andersons, awarding them $100,000 in actual damages on their fraud and breach of contract claims, $50,000 in punitive damages, and attorney's fees and costs. M & W appealed and the El Paso Court of Appeals affirmed the trial court's judgment. *See Mitchell & Walker Enter., Inc. v. Anderson*, No. 08–00–00412–CV, 2001 WL 522446 (Tex.App.-El Paso May 17, 2001, no pet.) (not designated for publication).

On September 18, 2001, the Andersons served post-judgment discovery requests on M & W. M & W did not respond. A writ of execution issued on the judgment, but was returned *nulla bona*, i.e., there was no sizable property within the jurisdiction and the judgment was not fulfilled. On June 18, 2002, the Andersons filed an application for turnover against M & W seeking the information previously sought in their post-judgment discovery requests. M & W opposed the Andersons' application for turnover. After a hearing, the trial court ordered M & W to produce the documents to the Andersons by December 13, 2002. The documents turned over by M & W revealed the shareholder loans made by Walker to M & W and the loan repayments made by M & W to Walker. On April 3, 2003, within four months of receiving the documents revealing the loans and loan repayments, the Andersons filed a lawsuit against Walker for fraudulent transfer in County Court at Law No. 4. On October 12, 2005, after a trial before the court, the trial court found in favor of the Andersons on their claims of fraudulent transfer pursuant to section 24.005(a)(1) of TUFTA and article 2.21 of the Texas Business Corporation Act. However, the trial court ordered that the Andersons take nothing on their claims for fraudulent transfer pursuant to sections 24.005(a)(2) and 24.006. The trial court awarded the Andersons actual damages in

the amount of $90,483, and attorney's fees and costs. On January 6, 2006, the trial court issued its findings of fact and conclusions of law.

## II. STANDARDS OF REVIEW

### A. *Findings of Fact*

██ Findings of fact in a case tried to the court have the same force and effect as jury findings. *See Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied). Unchallenged findings of fact are binding on an appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Mullins v. Mullins*, 202 S.W.3d 869, 874, 876–77 (Tex.App.-Dallas 2006, pet. denied). However, when an appellant challenges a trial court's findings of fact, an appellate court reviews those fact findings by the same standards it uses to review the sufficiency of the evidence to support a jury's findings. *See Pulley*, 198 S.W.3d at 426.

### 1. Legal Sufficiency

██ When an appellant attacks the legal sufficiency of an adverse finding on an issue for which he did not have the burden of proof, he must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); *Pulley*, 198 S.W.3d at 426; *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex.App.-Dallas 2005, pet. denied). A legal sufficiency review of a no-evidence point must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *See Kroger Tex. Ltd. v. Suberu*, 216 S.W.3d 788, 793 (Tex.2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005); *Pulley*, 198

S.W.3d at 426. An appellate court will sustain a no-evidence point when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003); *Pulley*, 198 S.W.3d at 426; *see Wilson*, 168 S.W.3d at 807.

██ Anything more than a scintilla of evidence is legally sufficient to support a trial court's finding. *See Marathon*, 106 S.W.3d at 727; *Pulley*, 198 S.W.3d at 426. However, a challenge to the legal sufficiency of the evidence will be sustained when the evidence offered to establish a vital fact does not exceed a scintilla. *See Kroger*, 216 S.W.3d at 793; *Wilson*, 168 S.W.3d at 810. Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *See Kroger*, 216 S.W.3d at 793.

### 2. Factual Sufficiency

██ When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding. *See Pulley*, 198 S.W.3d at 426. When reviewing a factual sufficiency challenge, an appellate court considers and weighs all of the evidence in support of and contrary to the trial court's finding and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996);

*Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Pulley,* 198 S.W.3d at 426. When conducting a factual sufficiency review of a trial court's findings, an appellate court will not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. *See Pulley,* 198 S.W.3d at 427. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *See Pulley,* 198 S.W.3d at 427.

### B. Conclusions of Law

 An appellate court conducts a de novo review of a trial court's legal conclusions. *Hackenjos v. Hackenjos,* 204 S.W.3d 906, 908 (Tex.App.-Dallas 2006, no pet.); *Mullins,* 202 S.W.3d at 874. A trial court's conclusions of law are independently evaluated to determine whether the trial court correctly drew the legal conclusions from the facts. *See Hackenjos,* 204 S.W.3d at 908; *Mullins,* 202 S.W.3d at 874.

## III. EXTINGUISHMENT OF CLAIMS UNDER SECTION 24.010(a)(1)

In issues one, four, and fifteen through seventeen, Walker argues the trial court erred when it found and concluded he did not prove his affirmative defense of the statute of repose. He challenges the trial court's finding of fact no. 20 and conclusions of law nos. 10, 11, and 13.

### A. Applicable Law

Section 24.010(a) of TUFTA provides that a cause of action with respect to a fraudulent transfer or obligation is extinguished unless the action is brought:

(1) under Section 24.005(a)(1) of [TUFTA][2] within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) under Section 24.005(a)(2)[3] or 24.006(a) [4] of [TUFTA], within four years after the transfer was made or the obligation was incurred; or

(3) under Section 24.006(b) of [TUFTA],[5] within one year after the transfer was made.

2. Section 24.005(a)(1) of TUFTA creates a cause of action for fraudulent transfer as to present and future creditors when the debtor made the transfer or incurred the obligation "with actual intent to hinder, delay, or defraud any creditor of the debtor." *See* TEX. BUS. & COM.CODE ANN. § 24.005.

3. Section 24.005(a)(2) of TUFTA provides a cause of action for fraudulent transfer as to present and future creditors when the debtor made the transfer or incurred the obligation:
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that the debtor

would incur, debts beyond the debtor's ability to pay as they became due.
TEX. BUS. & COM.CODE ANN. § 24.005(a)(2).

4. Section 24.006(a) of TUFTA creates a cause of action for fraudulent transfer as to present creditors, "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or became insolvent as a result of the transfer or obligation." TEX. BUS. & COM.CODE ANN. § 24.006(a).

5. Section 24.006(b) creates a cause of action for fraudulent transfer as to present creditors, "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider has reasonable cause to believe that the debtor was insolvent." TEX. BUS. & COM.CODE ANN. § 24.006(b).

TEX. BUS. & COM.CODE ANN. § 24.010(a) (Vernon 2002).

Whether a plaintiff filed his claim within one year of the time when the fraudulent transfer was or could reasonably have been discovered is a question of fact for the fact-finder. *See generally, Flores v. Ontiveros,* 218 S.W.3d 98, 105 (Tex.App.-Corpus Christi 2005, no pet.), *rev'd in part on other grounds,* 218 S.W.3d 70 (Tex.2007) (per curiam); *Cadle Co. v. Wilson,* 136 S.W.3d 345, 352 (Tex.App.-Austin 2004, no pet.); *Duran v. Henderson,* 71 S.W.3d 833, 839 (Tex.App.-Texarkana 2002, pet. denied). However, if reasonable minds could not differ about the conclusion to be drawn from the facts in the record, then the start of the time period before the claim is extinguished may be determined as a matter of law. *See generally, Cadle,* 136 S.W.3d at 352.

### B. Application of the Law to the Facts

Walker argues he proved his affirmative defense of the statute of repose pursuant to section 24.010(a)(1) because: (1) the trial court dismissed the Andersons' fraudulent transfer claims pursuant to sections 24.005(a)(2) and 24.006; (2) the Andersons had the burden to prove that the statute of repose did not apply; (3) there is no evidence to prove the Andersons served post-judgment discovery on M & W in support of finding of fact no. 20 or the alleged fraudulent transfers were made after April 1999 and within the four years immediately preceding the date of discovery, and the evidence shows the Andersons could reasonably have discovered the alleged fraudulent transfers more than a year before they brought their claims; and (4) conclusion of law no. 11 incorrectly states the law. The Andersons respond that the one-year discovery rule in section 24.010(a)(1) does not apply only to fraudulent transfers made in the four years immediately preceding the date of discovery as Walker suggests.

First, we address Walker's argument that the trial court should have dismissed the Andersons' claims pursuant to section 24.005(a)(1) because it ordered a take-nothing judgment on their claims pursuant to sections 24.005(a)(2) and 24.006. We cannot agree with Walker's argument as to the application of these statutes. Section 24.010 treats each of these sections differently, although Walker argues it treats them the same. Section 24.010(a)(2) provides that claims brought pursuant to sections 24.005(a)(2) and 24.006(a) will be extinguished unless they are brought within four years after the transfer was made or the obligation was incurred. *See* TEX. BUS. & COM.CODE ANN. § 24.010(a)(2). Section 24.010(a)(3) provides that claims pursuant to section 24.006(b) will be extinguished unless they are brought within one year after the transfer was made. *See id.* § 24.010(a)(3). However, section 24.020(a)(1) addresses section 24.005(a)(1) and provides that a cause of action under section 24.005(a)(1) is extinguished, unless the action is brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." *Id.* § 24.010(a)(1). Although similar to subsection 24.010(a)(1), subsections 24.010(a)(2) and (3) do not prevent claims from being extinguished when they are brought within one year after the transfer or obligation was or could reasonably have been discovered. That last provision in section 24.010(a)(1), which states "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant," is unique to section 24.005(a)(1). *Compare id.* § 24.010(a)(1) *with id.* § 24.010(a)(2), (3). As a result, when the

record supports the conclusion that claims brought pursuant to sections 24.005(a)(2) and 24.006 are extinguished under section 24.010(a)(2) or (3) and the specific basis for dismissal is not stated by the trial court, it does not necessarily follow that claims brought pursuant to section 24.005(a)(1) are extinguished under section 24.010(a)(1) because the additional provision, which states "or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant," must be satisfied.

■ Second, Walker argues it was the Andersons' burden to prove the statute of repose did not apply to their claims. We do not agree. It was Walker who pleaded the statute of repose as an affirmative defense. Accordingly, it was his burden to prove all elements of that affirmative defense. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996); *see also Smith v. Brown,* 51 S.W.3d 376, 379 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) (discussing res judicata).

Third, we address Walker's arguments that there is no evidence to prove: (a) the Andersons served post-judgment discovery on M & W in support of finding of fact no. 20; or (b) the alleged fraudulent transfers were made after April 1999 and within the four years immediately preceding the date of discovery. Further, Walker asserts the evidence shows the Andersons could reasonably have discovered the alleged fraudulent transfers more than a year before they brought their claims.

Specifically, in this regard, Walker challenges the trial court's finding of fact no. 20, which states as follows:

20. The Andersons served post-judgment discovery requests on M & W, consisting of interrogatories and request [sic] for production of documents, on September 18, 2001. This discovery sought information and documents about shareholders [sic] loans made and repaid between the company and Richard B. Walker, and also sought financial records, including tax returns, financial statements (profit and loss statements) and bank statements of M & W.

Walker argues there is no evidence to support finding of fact no. 20 because there is nothing in the record to show the Andersons served the post-judgment discovery on M & W. However, Walker does not challenge finding of fact no. 21, which states:

21. M & W did not answer the Andersons' post-judgment discovery requests **after being served with same.** A writ of execution issued on the Judgment was returned nulla bona.

(emphasis added). Finding of fact no. 21 is not challenged and sets forth the service of post-judgment discovery requests. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77.

■ Further, Walker claims finding of fact no. 20 shows the Andersons' claims were extinguished under section 24.010(a)(1) because the Andersons served their post-judgment discovery request on M & W on September 18, 2001, which was more than a year after the entry of the judgment against M & W on January 12, 2000. According to Walker this proves the Andersons could have known of the transfers earlier. Also, Walker challenges the trial court's conclusions of law nos. 10, 11, and 13, which state as follows:

10. The Court [concludes] that the Andersons' suit against Walker was timely filed within four years of the approval of the transfers made by Walker in April, 1999, and within four years of the judgment against M & W entered on June 12, 2000.

11. The Court further [concludes] that the Andersons' suit against Walker was

timely filed within one year of the date such transfers from M & W to Walker were actually known or should have been known by the Andersons and their counsel.

13. The Court [concludes] that Walker's statute of repose defense was not established by the evidence presented at trial.

Walker argues there is no evidence to support the trial court's conclusions of law nos. 10, 11, and 13, which conclude section 24.010(a)(1) did not extinguish the Andersons' claims pursuant to section 24.005(a)(1).

Section 24.010(a)(1) will not extinguish the Andersons' claims pursuant to section 24.005(a)(1) if the Andersons either filed their claim within four years after the transfer was made, or within one year after the transfer was or could reasonably have been discovered. *See* Tex. Bus. & Com. Code Ann. § 24.0101(a)(1). Whether the Andersons filed their claims pursuant to section 24.005(a)(1) within one year of the time the fraudulent transfer was or could reasonably have been discovered is a question of fact. *See generally, Flores,* 218 S.W.3d at 105; *Cadle,* 136 S.W.3d at 352; *Duran,* 71 S.W.3d at 839. The trial court made detailed findings of fact in findings of fact nos. 38 and 41, which Walker does not challenge on appeal. These findings negate Walker's interpretation of finding of fact no. 20 and support the trial court's conclusions of law nos. 10, 11, and 13.

Findings of fact nos. 38 and 41 state:

38. The Andersons filed the instant action against Walker for fraudulent transfers on April 3, 2003, within four months of their becoming aware of the loan repayments and dividend paid by Walker. The suit against Walker was filed within four years of the date of approval by Walker of the 1998 shareholder loan re-payments, dividend, and unrecorded advances against profits/loans.

41. The Andersons' suit against Walker was brought within four years of the date of the Judgment entered on June 12, 2000, against M & W.

Findings of fact nos. 38 and 41 are binding on this Court because Walker does not challenge them on appeal and they are supported by the record. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77. These unchallenged findings of fact show the trial court found the Andersons filed their claim within four months after the transfers were discovered and within four years of the date the 1998 year-end loan repayments were approved. As a result, these unchallenged findings support the trial court's conclusion that section 24.010(a)(1) did not extinguish the Andersons' claims brought pursuant to section 24.005(a)(1).

■ Finally, Walker argues the trial court's conclusion of law no. 11 misstates the law. He points out that conclusion of law no. 11 states the transfers were "filed within one year of the date such transfers … were actually known or **should** have been known by the Andersons …" (emphasis added). Walker contends this is a misstatement of the law because section 24.010(a)(1) states, "within one year after the transfer … was or **could** reasonably have been discovered …" (emphasis added). He argues "could" and "should" have different meanings that affect the application of section 24.010(a)(1). Walker claims the trial court's finding of fact no. 16 shows the Andersons could have discovered the fraudulent transfers during their suit against M & W.

Finding of fact no. 16 states:

16. The Andersons did not conduct net worth discovery of M & W in the M & W suit although they could have done so

in support of their claim for punitive damages against [M & W].

Walker claims finding of fact no. 16 shows the Andersons had the method, means, opportunity, and legal right to discover the transfers. We agree that the terms "could" and "should" have different meanings. However, Walker does not dispute that the Andersons could not reasonably have discovered the fraudulent transfers without the documents obtained through the post-judgment discovery. Other than pointing out that the Andersons admitted they could have conducted net worth discovery of M & W, Walker presents no argument or authorities to show the Andersons could "reasonably" have discovered the transfers were fraudulent in nature, that they would have obtained the same documents during net worth discovery that they obtained during their post-judgment discovery, or that the Andersons had a particular duty to investigate M & W's net worth, in any degree, in support of their claim for punitive damages.

We conclude the trial court did not err when it concluded Walker did not prove his affirmative defense of the statute of repose or that the Andersons' claims were extinguished pursuant to section 24.010(a)(1). Issues one, four, and fifteen through seventeen are decided against Walker.

## IV. RES JUDICATA

In issues two and eighteen, Walker argues the trial court erred when it concluded he did not prove his affirmative defense of res judicata. He challenges the trial court's conclusion of law no. 15. Walker argues the trial court incorrectly based its conclusion on an opinion of the Texas Supreme Court that is distinguishable from the facts of this case. Also, he argues the Andersons, with reasonable diligence, could have litigated their claims against him in their lawsuit against M & W because their claims arise out of the same nucleus of operative facts.

### A. Applicable Law

Res judicata prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). It serves as a bar to subsequent collateral attacks on a final judgment. *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex.1990). Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). The purpose of res judicata is to preserve the sanctity of judgments. *Matthews*, 796 S.W.2d at 694. The application of res judicata in a suit to enforce a judgment would pervert the sanctity of judgments, not preserve them. *Id.* A suit against the alter ego of a corporation to enforce a judgment against the corporation does not constitute a collateral attack on the judgment against the corporation. *Id.*

### B. Application of the Law to the Facts

Walker challenges the trial court's conclusion of law no. 15, which states as follows:

15. The Court [concludes] that Walker's res judicata defense is expressly precluded under the decision of the Texas Supreme Court in *Matthews Constrn [sic] Co. v. Rosen*, 796 S.W.2d 692, 694

(Tex.1990), and was not established by the evidence presented at trial.

Walker argues the trial court incorrectly concluded that *Matthews* is applicable to this case. He contends *Matthews* is distinguishable because there is nothing in *Matthews* to indicate that, in the underlying breach of contract lawsuit, Matthews Construction Co. complained of or suspected fraudulent conduct on the part of Houston Pipe and Supply Co. or Harvey Rosen, its sole shareholder and president. Walker claims *Matthews* does not apply because, in the underlying lawsuit to this case, the Andersons obtained a final judgment against M & W for fraud so their lawsuit against Walker for fraudulent transfer is nothing more than a continuation of their earlier fraud claim.

■■■ A claim for fraudulent transfer is a separate cause of action from fraud. *See Nobles v. Marcus,* 533 S.W.2d 923, 925 (Tex.1976); *see also Mikulich v. Perez,* 915 S.W.2d 88, 94 (Tex.App.-Amarillo 1996, no writ) (Rickhoff, J., concurring). The Andersons sued M & W for fraud alleging M & W misrepresented it would install thermopane windows, failed to disclose it was not building the second story bedroom and garage in accordance with the Plano building code, obtained a variance from an engineer without their knowledge or consent, and failed to provide a ten-year homeowner's warranty as promised. However, in their lawsuit against Walker, the Andersons alleged he fraudulently transferred funds from M & W to himself through shareholder loan repayments and dividends. These claims are not based on the same operative facts.

We conclude the trial court did not err when it concluded Walker did not prove his affirmative defense of res judicata. Issues two and eighteen are decided against Walker.

## V. FRAUDULENT TRANSFERS

In issues three, five through thirteen, and twenty, Walker argues the trial court erred when it found and concluded he fraudulently transferred funds from M & W. He challenges the legal and factual sufficiency of the evidence to support the trial court's findings of fact nos. 4, 25, 31, and 34. Also, he challenges the trial court's conclusions of law nos. 1–6 and 17.

### A. Applicable Law

■■■ TUFTA provides remedies to creditors of debtors who fraudulently transfer assets under certain circumstances, as set out in the statute. *See* Tex. Bus. & Com.Code Ann. §§ 24.005–.006, 24.008; *see also Goebel v. Brandley,* 174 S.W.3d 359, 362 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A transfer made by a debtor is fraudulent as to a present or future creditor if the transfer was made with: (1) actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) if the transfer is made without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor (a) was engaged in or about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (b) intended to incur or reasonably should have believed he would incur debts beyond the debtor's ability to pay as they became due. *See* Tex. Bus. & Com.Code Ann. § 24.005(a); *G.M. Houser, Inc. v. Rodgers,* 204 S.W.3d 836, 842 (Tex. App.-Dallas 2006, no pet.). The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence. *See G.M. Houser,* 204 S.W.3d at 842. It is the creditor's burden to offer evidence addressing the elements of fraudulent transfer as to each transfer. *See id.* at 843.

Ordinarily, whether the transfer was made with the actual intent to defraud creditors is a fact question. *See Connell v. Connell,* 889 S.W.2d 534 (Tex. App.-San Antonio 1994, writ denied). However, direct proof of fraudulent intent is often unavailable. *See G.M. Houser,* 204 S.W.3d at 842. Therefore, circumstantial evidence may be used to prove fraudulent intent. *Id.* Section 24.005(b) of TUFTA sets out a non-exhaustive list of facts and circumstances, which are known as the "badges of fraud," to be considered in determining whether a transfer was made with actual intent to defraud. *See* Tex. Bus. & Com.Code Ann. § 24.005(b); *G.M. Houser,* 204 S.W.3d at 842.[6] An individual badge of fraud is not conclusive, but a concurrence of many badges in the same case will always make out a strong case of fraud. *See G.M. Houser,* 204 S.W.3d at 843. While evidence of a transfer to an insider is one factor to consider in determining actual intent to defraud, that fact alone does not support a conclusion the transfer constitutes a fraudulent transfer. *See id.*

### B. Legal and Factual Sufficiency of Findings of Fact

In issues three and five through seven, Walker challenges the legal and factual sufficiency of the trial court's findings of fact nos. 4, 25, 31, and 34.

First, Walker challenges the trial court's finding of fact no. 4, which states:

4. [The Andersons] requested [M & W] to complete the punchlist items and repair warranty items on several occasions. [M & W] performed some of the requested repairs, but refused to make other repairs or to complete all of the punchlist items.

Walker argues there is no evidence to support this finding, the subject matter of this finding was subsumed in the judgment against M & W, and it has "no independent relevance." The Andersons respond that finding of fact no. 4 is supported by the testimony of Lynn Anderson and is relevant to prove Walker's intent to disregard M & W's obligations, while continuing to cause M & W to repay him for the shareholder loans. Also, Walker does not challenge findings of fact nos. 3, 5, and 32, where the trial court found that: (1) when the Andersons closed on their home there were incomplete items that M & W agreed to complete as well as punchlist or warranty items remaining to be completed; (2) the Andersons initially filed a small claims lawsuit against M & W for failure to complete the construction contract; and (3) M & W's loan repayments were made by Walker with knowledge and awareness of the pending litigation between the

---

6. The "badges of fraud" may include the following:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com.Code Ann. § 24.005(b); *see G.M. Houser,* 204 S.W.3d at 842–43.

Andersons and M & W. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77. We conclude the evidence is legally and factually sufficient to support the trial court's findings of fact no. 4.

█ Second, Walker challenges the trial court's findings of fact nos. 25 and 31, which state:

25. The records turned over by M & W to the Andersons on December 13, 2002 revealed that Walker made numerous loans to [M & W], and [M & W] made numerous loan repayments between 1992 through 1999, when [M & W] ceased conducting any active business.

31. In 1998 and January, 1999, Walker paid himself unrecorded advances against profits/loans from M & W's revenues totaling $31,500.00.

Walker argues there is no evidence that M & W made any loan repayments to him in 1999. He contends the last loan repayment was made in 1998. The Andersons respond that the repayment of the shareholder loans in 1998 was not ratified and approved until April 22, 1999, and Plaintiff's Exhibit 31 shows payments to Walker from M & W in 1999. Additionally, Walker did not challenge the trial court's findings of fact nos. 30 and 35, where the trial court found that the 1998 year-end shareholder loan repayments were not approved and ratified until April 1999 and those loan repayments were for loans made by Walker to M & W in prior years. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77. Further, Plaintiff's Exhibit 31 consists of copies of thirteen M & W checks made payable to Walker with dates ranging from January through May of 1999. We conclude the evidence is legally and factually sufficient to support the trial court's findings of fact nos. 25 and 31.

█ Third, Walker challenges the trial court's finding of fact no. 34, which states:

34. When Walker ratified and approved the loan repayments by M & W at its annual meeting in April, 1999, he was aware that the Andersons were seeking actual damages against the company of $200,000.00 based on claims for breach of contract, deceptive trade practices, and fraud, and that punitive damages were also being sought.

Walker argues there is no evidence to prove he was aware the Andersons were seeking actual damages in the amount of $200,000 against M & W because the second amended original petition filed against M & W states the Andersons seek "actual damages in an amount not more than $200,000." However, Walker does not challenge the trial court's finding of fact no. 12, which states:

12. On March 26, 1999, in response to special exceptions filed by [M & W], Mr. Clark, on behalf of the Andersons, filed a Second Amended Original Petition stating the maximum amount of their actual damages did not exceed the sum of $200,000.00.

Unchallenged finding of fact no. 12 shows that on March 26, 1999, the maximum amount of actual damages sought by the Andersons in their lawsuit against M & W was $200,000. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77. We conclude the evidence is legally and factually sufficient to support the trial court's findings of fact no. 34.

We conclude the evidence is legally and factually sufficient to support the trial court's findings of fact nos. 4, 25, 31, and 34. Issues three and five through seven are decided against Walker.

### C. Conclusions of Law

█ In issues eight through thirteen and twenty, Walker challenges the trial court's conclusions of law nos. 1–6 and 17, which state:

1. The Court [concludes] that adequate evidence submitted at trial supports a judgment that Walker fraudulently transferred to himself in violation of Section 24.005(a)(1), Tex.Bus. & Comm. Code [sic], with knowledge of the Anderson's [sic] claims against M & W, loan repayments, payment of a dividend, and advances of profit/loans in 1998 and January 1999, which were approved and ratified by Walker as the sole director and shareholder of M & W in April, 1999.

2. The Court further [concludes] that the evidence submitted at trial that the 1998 loan repayments, payment of a dividend, and loan advances made by Walker were done with the intent to hinder, delay, and defraud the Andersons.

3. The Court further [concludes] that the evidence submitted at trial that the 1998 loan repayments, payment of a dividend, and loan advances made by Walker were done without M & W receiving a reasonably equivalent value in exchange for such transfers, and that such transfers left M & W without sufficient assets to pay its obligations to creditors, including the Andersons.

4. The Court further concludes that the evidence submitted at trial supports a judgment that Walker used M & W for the purpose of perpetrating, and did perpetrate an actual fraud on the Andersons for the direct personal benefit of Walker, the sole shareholder and director of M & W, in violation of Article 2.21(a)(2), Tex.Bus.Corp.Act [sic].

5. The Court [concludes] that adequate evidence was submitted at trial of the following "badges" of fraud by Walker:

 a. undocumented shareholder loans made by Walker "to keep the company [M & W] afloat"[;]

 b. repayment of shareholder loans with knowledge of the Andersons' claim against M & W which left the company without adequate assets to pay the Andersons' claim;

 c. payment of a dividend and unrecorded advances against profits/loans to Walker from M & W, which, the repayment of shareholder loans, left the company without adequate assets to pay the Andersons' claim;

 d. diversion of business from M & W to a new corporation, DDD, when M & W had a ten-year history of performing such work, as opposed to a newly created corporation with no track record;

 e. made the decision not to defend the company at trial, after shutting the company down as an active business, and after vigorously defending the Andersons' claim pretrial, because Walker acknowledged it would require putting money back into M & W in order to defend it at trial;

 h. the company was in a negative equity position most of its existence, and in a negative equity position in all years un which shareholder loans were repaid[;]

 i. the transfers from M & W to Walker were to an insider;

 j. the transfers from M & W to Walker were made after the Andersons had filed the M & W suit; [and]

 k. M & W became insolvent shortly after the transfers were made.

6. The Court [concludes] that adequate evidence submitted at trial supports a judgment that the sum of $90,483.00 was fraudulently transferred from M & W to Walker in derogation of the Andersons' claims against M & W.

17. The Court [concludes] that the Andersons are entitled to the Judgment entered on October 12, 2005.

We have already concluded there is legally and factually sufficient evidence to support the trial court's findings of fact nos. 4, 25, 31, and 34. In addition to those findings of fact, the trial court made several detailed findings that Walker does not challenge on appeal. Together, these findings support conclusions of law nos. 1–6 and 17. Specifically, Walker does not challenge findings of fact nos. 2, 5–6, 10, 29–30, 32–33, 35–37, and 39–40.[7] These findings of fact are binding on this Court because Walker does not challenge them on appeal and they are supported by the record. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77. These unchallenged findings support the trial court's conclusions of law nos. 1–6 and 17 because they establish Walker's actual intent to defraud through the concurrence of the badges of fraud enumerated.

We conclude the trial court did not err when it concluded Walker fraudulently transferred funds from M & W. Issues eight through thirteen are decided against Walker.

7. Findings of fact nos. 2, 5–6, 10, 29–30, 32–33, 35–37, and 39–40 state as follows:

2. M & W was incorporated as a Texas corporation in 1988, and is owned by Richard B. Walker, who has been its sole director and shareholder since 1989.

5. The Andersons initially filed a small claims suit against [M & W] on April 3, 1995, alleging damages of $5,000.00, for [M & W's] failure to complete the construction contract.

6. The Andersons subsequently retained counsel and dialed suit in County Court at Law No. 1 of Collin County, Texas against [M & W] on October 31, 1995 ("M & W Suit") on claims of breach of contract, breach of warranty, and deceptive trade practices. The Andersons were initially represented by the firm of Shields, Britton & Frazier.

10. Mr. Walker also confirmed in his deposition that he was the sole shareholder and director of [M & W].

26. In February, 1999, Walker incorporated Double Diamond Design ("DDD") as a Texas corporation. Walker was the sole shareholder and director of DDD.

27. Although DDD was originally established to develop condominium properties in Vail, Colorado, Walker used DDD to construct residential homes and townhomes in the Austin and Dallas area from 1999 to the present.

28. Walker could have used M & W to perform such construction, but chose not to do so.

29. Walker has not filed Articles of Dissolution for M & W, although it has not been an inactive entity since mid–1999, when its last construction project was completed.

30. For year-end 1998, but not formally approved and ratified by Walker until M & W's annual meeting in April, 1999, M & W repaid to Walker shareholder loans made in prior years in the amount of $50,983.00, which reduced the shareholder loan balance to zero. He also paid himself an $8,000.00 dividend, in addition to his salary.

32. The loan repayments, dividend and unreported advances against profits/loans made by Walker, as sole shareholder and director of M & W, were done with Walker's knowledge and awareness of the pending litigation between the Andersons and M & W.

33. When Walker decided to wind down M & W in early 1999, the claim of the Andersons was the largest outstanding claim against M & W.

35. The loan repayments to Walker, approved in April, 1999, were for loans made by Walker to [M & W] in prior years.

36. The beginning balance of shareholder loans made by Walker to M & W as of January 1, 1993 was $136,193.00.

37. Walker made an additional loan of $6,846.00 to M & W in 1996.

39. Walker acknowledged that M & W never made money, and he had "worked too hard to get his money out of [M & W]."

40. Walker admitted that M & W required the shareholder loans from him in order to meet its expenses and obligations to creditors.

## V. INDIVIDUAL LIABILITY

In issue nineteen, Walker argues the trial court erred when it concluded article 2.21, section A did not require the Andersons to pierce the corporate veil to hold him individually liable. The basis for his assertion of error is his challenge to conclusion of law no. 16. The Andersons generally respond by referring us to their argument relating to Walker's claim regarding the statute of repose.

### A. Applicable Law

A corporation is a separate legal entity from its shareholders, officers, and directors. *See Boyo v. Boyo*, 196 S.W.3d 409, 419 (Tex.App.-Beaumont 2006, no pet.); *Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 68 (Tex.App.-San Antonio 1988, writ denied). Under section 21.223(a)(2) of the Texas For–Profit Corporation Law, a shareholder "may not be held liable to the corporation or its obligees with respect to ... any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the [share]holder ... is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." TEX. BUS. ORGS.CODE ANN. § 21.223(a)(2) (Vernon Supp.2006) (previously codified at TEX. BUS. CORP. ACT ANN. art. 2.21, § A (Vernon 2003)); *Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006). Section 21.223(a)(2) limits shareholder liability for contractual obligations of the corporation. TEX. BUS. ORGS.CODE ANN. § 21.223(a)(2) (previously codified at TEX. BUS. CORP. ACT ANN. art. 2.21, § A). The acts of a corporate agent on behalf of the principal are ordinarily deemed to be the corporation's acts. *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex.1995); *COC Services, Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 675 (Tex.App.-Dallas 2004, pet. denied). The individual employee or officer who acts for a corporation is that corporation's agent. *See Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468, 485 (Tex.App.-Houston [1 st Dist.] 2007, no pet.).

However, it is the general rule in Texas that a corporation's employee is personally liable for tortious acts which he directs or participates in during his employment. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *Kingston v. Helm*, 82 S.W.3d 755, 758 (Tex.App.-Corpus Christi 2002, pet. denied). Also, a corporate officer who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation. *See Kingston*, 82 S.W.3d at 759. It is not necessary to pierce the corporate veil in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing. *See id.* The fraudulent transfer of assets is a tort. *See* TEX. BUS. & COM.CODE ANN. § 24.005; *In re Texas Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex.App.-Dallas 2005, orig. proceeding).

### B. Application of the Law to the Facts

Walker challenges the trial court's conclusion of law no. 16, which states:

16. The Court [concludes] that Article 2.21(a), Tex.Bus.Corp.Act [sic], does not require the corporate veil to be pierced in order to hold a corporate shareholder individually liable. *Kingston v. Helm*, 82 S.W.3d 755, 758 (Tex.App.-Corpus Christi 2002, pet. denied).

He claims the trial court incorrectly concluded that *Kingston* applies to this case. He contends the Corpus Christi Court of Appeals reached its legal conclusion in *Kingston* based on the law of agency,

which was not pleaded in this case. Walker claims the Corpus Christi Court of Appeals's reliance on the law of agency is apparent from the following statement in the opinion:

We hold that Kingston is not required to meet the standard for piercing the corporate veil set forth in article 2.21 in order to impose personal liability upon Helm. This case involves an agent of a corporation being held accountable as an individual for his own individual conduct. The fact that Helm is a shareholder or an owner or an officer of GDI is not relevant to the question of whether he can be held individually liable for his own tortious conduct. The longstanding law in Texas is clear that he can be held so liable, and we do not believe that article 2.21 was intended to insulate corporate agents from individual liability for their own tortious conduct.

*Id.* at 766–67.

Walker's contention that the Corpus Christi Court of Appeals's opinion in *Kingston* is based on the law of agency is incorrect. Rather, the Corpus Christi Court of Appeals applied the long-standing Texas rule that corporate agents are not shielded by agency law for their own tortious conduct.

We conclude the trial court did not err when it concluded article 2.21, section A did not require the Andersons to pierce the corporate veil to hold Walker individually liable. Issue nineteen is decided against Walker.

## V. ATTORNEY'S FEES AND COSTS

In issues fourteen and twenty-one, Walker argues the trial court erred when it concluded the Andersons were entitled to attorney's fees and costs. He chal-

lenges the trial court's conclusions of law nos. 7–9. Also, he argues the trial court should have awarded him attorneys fees and costs because the trial court dismissed the Andersons' claims pursuant to sections 24.005(a)(2) and 24.006 and entered an erroneous judgment in favor of the Andersons on their claims pursuant to section 24.005(a)(1) of the Texas Business and Commerce Code and article 2.21, section A of the Texas Business Corporations Act.[8] The Andersons respond that, although the trial court granted Walker's motion for judgment, in part, and ordered that they take nothing on their claims pursuant to sections 24.005(a)(2) and 24.006, they voluntarily withdrew those claims during the argument on Walker's motion for judgment.

### A. Applicable Law

 Section 24.013 of TUFTA provides that "the court may award costs and reasonable attorneys fees as are equitable and just." TEX. BUS. & COM.CODE ANN. § 24.013 (Vernon Supp.2006). This provision of TUFTA gives the trial court the sound discretion to award attorney's fees based on the evidence the trial court heard. *See Chu v. Hong,* 185 S.W.3d 507, 515 (Tex.App.-Fort Worth 2005, pet. granted) (citing *Bocquet v. Herring,* 972 S.W.2d 19, 20–21 (Tex.1998) (reviewing similar statutes that provide a court "may award" attorney's fees)).

### B. Application of the Law to the Facts

 Walker challenges the trial court's conclusions of law nos. 7–9, which state as follows:

7. The Court [concludes] that it is equitable and just to award to the Andersons their reasonable and necessary attor-

---

**8.** *See* TEX. BUS. ORGS.CODE ANN. § 21.223 (previously codified at TEX. BUS. CORP. ACT ANN. art. 2.21, § A).

neys' fees and expert fees as costs pursuant to section 24.013, Tex.Bus. & Comm.Code [sic].

8. The Court [concludes] from the evidence submitted at trial that reasonable and necessary attorneys' fees to the Andersons through the trial of the case would be the sum of $37,500.00, and that expert costs for the Andersons through the trial of the case is the sum of $10,000.00, and should be awarded to the Andersons.

9. The Court [concludes] from the evidence submitted at trial that a conditional award of attorneys' fees and expenses for the Andersons would be the following:

 a. $3500.00 for any post-trial motions filed by Walker and successfully defended by the Andersons;

 b. $5,000.00 in the event that Walker files an appeal to the Court of Appeals and the judgment is affirmed; [and]

 c. $5,000.00 in the event that Walker files a petition for review in the Texas Supreme Court, and the petition is dismissed or denied.

After a trial before the court, a judgment was entered in favor of the Andersons on their fraudulent transfer claims pursuant to section 24.005(a)(1) that awarded the Andersons their attorney's fees and costs pursuant to section 24.013. Also, the trial court made detailed findings

of fact in support of conclusions of law nos. 7–9.[9] Findings of fact nos. 42–46 are binding on this Court because Walker does not challenge them on appeal and they are supported by the record. *See McGalliard,* 722 S.W.2d at 696; *Mullins,* 202 S.W.3d at 876–77. The trial court awarded the Andersons the attorney's fees and costs based on the evidence it heard. *See Chu,* 185 S.W.3d at 515.

We conclude the trial court did not err when it concluded the Andersons were entitled to attorneys fees and costs. Issues fourteen and twenty-one are decided against Walker.

## VI. CONCLUSION

The trial court did not err when it found and concluded Walker did not prove his affirmative defense of the statute of repose and concluded he did not prove his affirmative defense of res judicata. Also, the trial court did not err when it found and concluded Walker fraudulently transferred funds from M & W and concluded the Andersons did not need to pierce the corporate veil to hold Walker individually liable. Finally, the trial court did not err when it concluded the Andersons should be awarded attorney's fees and costs.

The trial court's judgment is affirmed.

9. Findings of fact nos. 42–46 state:

 42. The Andersons' incurred reasonable attorneys' fees and expert expenses in prosecuting their fraudulent transfer claims against Walker.

 43. The sum of $47,500.00 represents the reasonable and necessary attorneys' fees and expert expenses incurred by the Andersons in prosecuting their claims in the trial court.

 44. The sum of $3,500.00 represents the reasonable and necessary attorneys' fees which the Andersons will incur in success-

fully defending against any post-trial motions filed by Walker.

 45. The sum of $5,000.00 represents the reasonable and necessary attorneys' fees which the Andersons will incur in successfully defending against any appeal taken by Walker to the Court of Appeals.

 46. The sum of $5,000.00 represents the reasonable and necessary attorneys' fees which the Andersons will incur in successfully defending against any petition for review filed by Walker in the Texas Supreme Court.