Gloria Jean MULLINS, Appellant,

v.

William Gerard MULLINS a/k/a
Kayo Mullins, Appellee.

No. 05–04–01374–CV.

Court of Appeals of Texas,
Dallas.

Aug. 28, 2006.

Rehearing Overruled Oct. 24, 2006.

Gregory Thomas Perkes, The Perkes Law Firm, P.C., Corpus Christi, TX, for appellant.

James F. Newth, Dallas, TX, for appellee.

Before Justices RICHTER, LANG, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Gloria Jean Mullins appeals the trial court's corrected final decree of divorce and second corrected qualified domestic relations order (QDRO), which awarded William Gerard Mullins a/k/a Kayo Mullins half of her retirement benefits. She also appeals the trial court's orders denying her motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and the first corrected QDRO.

Ms. Mullins raises four issues on appeal: (1) the trial court had no jurisdiction to enter the second corrected QDRO; (2) the trial court erred when it entered the corrected divorce decree because it varies from the terms of the parties' mediated settlement agreement with regard to Ms. Mullins's post-divorce retirement benefits; (3) the trial court erred when it entered the corrected divorce decree because it varies from the terms of the parties' mediated settlement agreement with regard to Ms. Mullins's pre-marriage retirement benefits; and (4) the trial court erred when it denied Ms. Mullins's motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and the first corrected QDRO. Mr. Mullins seeks modification of the corrected divorce decree and second corrected QDRO to correct typographical errors.

We conclude the trial court did not have jurisdiction to enter the second corrected QDRO. However, we conclude the trial court did not err when it entered the corrected divorce decree and denied Ms. Mullins's motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and the first corrected QDRO.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Mullins and Ms. Mullins were married on August 31, 1985. Mr. Mullins petitioned for divorce on November 18, 2002, and Ms. Mullins counter petitioned for divorce on December 16, 2002. Each party submitted a sworn inventory and appraisement reflecting his or her assessment of their community and separate property. In Ms. Mullins's appraisement, she only listed her retirement benefits as community property.

On August 11, 2003, Mr. Mullins and Ms. Mullins, with their counsel, participated in mediation. At mediation, they reached an agreement and signed a mediated settlement agreement which resolved all contested issues regarding their children, separate and community property, and debts. In the mediated settlement agreement, both parties transferred separate and community property between themselves. Term number 5 in Schedule A of the mediated settlement agreement sets forth the parties' agreement with respect to Ms. Mullins's retirement benefits and states

> 5. [Ms. Mullins's] retirement account(s) shall be split 50/50 between the parties, with appropriate QDRO.

Mr. Mullins moved for the trial court to enter a final decree of divorce and QDRO. In response, Ms. Mullins filed a motion to rescind the mediated settlement agreement, claiming the agreement was erroneous due to a mutual mistake because it

was not contemplated that Mr. Mullins would receive any portion of her retirement benefits earned outside of their marriage. In the alternative, she claimed the mediated settlement agreement was erroneous because there was no meeting of the minds. Also, Ms. Mullins objected to the entry of the QDRO. During the hearing on June 10, 2004, Ms. Mullins invoked her attorney/client privilege when questioned about the meaning of term number 5 in the mediated settlement agreement. However, the trial court admitted an email from the mediator to Ms. Mullins's attorney stating the mediator believed the mediated settlement agreement "could only have meant to split [Ms. Mullins's] retirement for the years of marriage, that is the community portion of it" and sustained Ms. Mullins's objection to the testimony of the mediator. After the hearing, the trial court entered a final decree of divorce and QDRO, awarding Mr. Mullins 50% of Ms. Mullins's retirement benefits as of the date of the decree. On July 15, 2004, the trial court entered an order denying Ms. Mullins's motion to rescind the mediated settlement agreement and granting Mr. Mullins's motion to enter a final divorce decree.

The parties filed an agreed motion to correct the divorce decree and QDRO to change the date of entry from June 10, 2004 to July 3, 2004. The trial court granted the motion and entered the corrected divorce decree and the first corrected QDRO on September 7, 2004. Meanwhile, on July 23, 2004, Ms. Mullins filed a request for findings of fact and conclusions of law. She also filed a motion for new trial and a motion for reconsideration, which reasserted her prior arguments and alleged a latent ambiguity in the mediated settlement agreement. During the hearing on Ms. Mullins's motions, the trial court took judicial notice of its file in this case, but no other evidence was presented.

On September 15, 2004, Ms. Mullins filed her second request for findings of fact and conclusions of law. On September 22, 2004, the trial court denied Ms. Mullins's motion for new trial and motion for reconsideration.

On October 7, 2004, Ms. Mullins filed a motion to modify the corrected divorce decree and the first corrected QDRO and a second motion for new trial and reconsideration. The record does not show the trial court ruled on these motions. On October 18, 2004, the trial court issued its findings of fact and conclusions of law in response to Ms. Mullins's requests. Ms. Mullins filed a motion requesting amended findings of fact and conclusions of law. However, the trial court did not amend them.

On December 29, 2004, the trial court entered a second corrected QDRO, which added the following language:

5. The Court finds and the parties agree that in order to effect an equitable settlement of the estate, separate property of the participant is awarded to the alternate payee.

The record does not show that a motion requesting a second corrected QDRO was filed or that there was a hearing to that effect.

## MOTION TO STRIKE SECOND SUPPLEMENTAL CLERK'S RECORD

■ On September 23, 2005, James F. Newth, counsel for Mr. Mullins, filed a motion requesting a second supplemental clerk's record containing the following documents: (1) a letter dated November 15, 2004 from Vivien E. Whatley of the Teacher Retirement System of Texas to Mr. Mullins; (2) a letter dated December 3, 2004 from James Newth to Judge Parker; and (3) a letter dated December 10, 2004

from Gregory T. Perkes to Judge Parker. On September 29, 2005, this Court ordered the Dallas County District Clerk to file a second supplemental clerk's record containing those letters to the extent they were a part of the trial court's record.

The second supplemental clerk's record was filed on October 3, 2005. The second supplemental clerk's record contains only a letter from James F. Newth to the District Clerk that is file marked September 30, 2005. Mr. Newth's letter to the District Clerk requested that the attached letters be included in the second supplemental clerk's record. Attached to Mr. Newth's letter was a copy of this Court's order along with copies of the three letters he requested to be included in the second supplemental clerk's record. The letters attached to Mr. Newth's letter were not file marked and were labeled with exhibit numbers that corresponded to the exhibit numbers referenced in Mr. Newth's letter.

On November 3, 2005, Mr. Mullins filed his brief. In the appendix to his brief, Mr. Mullins included the three letters. In response to Ms. Mullins's first issue, he referred to those letters to show the trial court had jurisdiction to enter the second corrected QDRO. In her reply brief, Ms. Mullins argued these documents were not part of the clerk's record and requested that this Court strike the second supplemental clerk's record.

This Court requested the District Clerk to certify whether these letters were a part of the trial court's record before Mr. Newth sent them to the District Clerk on September 30, 2005. In response, the transcript clerk filed an affidavit stating that the letters were not included in the trial court's record before September 30, 2005 and they only appear in the record as attachments to Mr. Newth's September 30, 2005 letter. Accordingly, Ms. Mullins's motion to strike the second supplemental

clerk's record is granted. Also, we will not consider the letters that are included in Mr. Mullins's appendix to his brief. *See* Tex.R.App. P. 38.1(f); *Burke v. Ins. Auto Auctions,* 169 S.W.3d 771, 775 (Tex.App.-Dallas 2005, pet. denied).

## TRIAL COURT'S JURISDICTION TO ENTER CORRECTED QDRO

■ In her first issue, Ms. Mullins argues the trial court had no jurisdiction to enter the second corrected QDRO because it improperly effected a substantive change from the corrected final decree of divorce. Mr. Mullins responds that the Teacher Retirement System determined that the first corrected QDRO did not satisfy the requirements of a QDRO under section 9.104 of the Texas Family Code, which gives the trial court jurisdiction to correct the QDRO under such circumstances.

■ The question of jurisdiction is an issue of law an appellate court reviews de novo. *Marshall v. Priess,* 99 S.W.3d 150, 156 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Section 9.104 of the Texas Family Code allows the correction of a QDRO that is defective. *See In re Marriage of Jones,* 154 S.W.3d 225, 228 (Tex.App.-Texarkana 2005, no pet.). Section 9.104 also provides the trial court with continuing jurisdiction if a QDRO was submitted to and rejected by a plan administrator. It states

If a plan administrator or other person acting in an equivalent capacity determines that a domestic relations order does not satisfy the requirements of a qualified domestic relations order or similar order, the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order.

TEX. FAM.CODE. ANN. § 9.104 (Vernon 2006). A trial court errs when it enters an amended QDRO if there is nothing in the record to indicate the amended QDRO was necessary, i.e., the QDRO was submitted to and rejected by the plan administrator. *See McKnight v. Trogdon–McKnight,* 132 S.W.3d 126, 132 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

We have stricken from the appellate record the second supplemental clerk's record which contains the letter from Vivien Whatley of the Teacher Retirement System. Without the letter from the Teacher Retirement System, there is nothing in the record to show the first corrected QDRO was submitted to and rejected by the plan administrator, providing the trial court with jurisdiction to enter the second corrected QDRO. Accordingly, based on the record before us, the trial court did not have jurisdiction to enter the second corrected QDRO.

Ms. Mullins's first issue is decided in her favor.

### MS. MULLINS'S RETIREMENT BENEFITS

In issues two through four, Ms. Mullins argues the trial court erred when it (1) entered the corrected divorce decree because it varies from the terms of the parties' mediated settlement agreement with regard to Ms. Mullins's post-divorce and pre-marriage retirement benefits; and (2) denied her motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and the first corrected QDRO.

### Standard of Review

An appellate court conducts a de novo review of a trial court's legal conclusions. *Gentry v. Squires Constr., Inc.,* 188 S.W.3d 396, 402 (Tex.App.-Dallas 2006, no pet.);

*see also Fischer–Stoker v. Stoker,* 174 S.W.3d 272, 277 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). A trial court's conclusions of law are independently evaluated to determine whether the trial court correctly drew the legal conclusions from the facts. *See Gentry,* 188 S.W.3d at 401; *Dallas Morning News Co. v. Bd. of Trustees,* 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied). However, incorrect conclusions of law will not require a reversal if the controlling findings of fact will support the judgment under a correct legal theory. *See Gentry,* 188 S.W.3d at 401. Where the trial court's findings of fact are unchallenged by complaint on appeal, they are binding on the appellate court and are entitled to the same weight as a jury verdict unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex. 1986); *Toles v. Toles,* 45 S.W.3d 252, 265 n. 6 (Tex.App.-Dallas 2001, pet. denied); *see also Fischer–Stoker,* 174 S.W.3d at 277.

### Post–Divorce Retirement Benefits

■ In issue two, Ms. Mullins claims the trial court did not draw the correct legal conclusions because, absent evidence of her express intent to do otherwise, the 50/50 split of her retirement in the mediated settlement agreement excluded any retirement benefits she will acquire after the date of the divorce decree. Although she does not frame her issue as a challenge to the trial court's conclusions of law, Ms. Mullins appears to challenge the following conclusions of law:

9. The Paragraph that provides [Ms.] Mullins' [sic] retirement account(s) shall be split 50/50 between the parties, with the appropriate QDRO is clear and unambiguous.

14. Had the parties intended for less than all of [Ms. Mullins's] retire-

ment to be divided then the parties could have included restrictive language to that effect in the [Mediated Settlement Agreement].

The trial court made the following finding of fact in support of its conclusion of law, which Ms. Mullins does not challenge and is supported by the record:

21. [T]he plain meaning of term number 5 of the [Mediated Settlement Agreement] is the total amount of [Ms. Mullins's] retirement through the date of the decree.

Finding of fact number 21 does not support Ms. Mullins's interpretation of the trial court's conclusions of law. The trial court's finding of fact clearly shows the trial court determined that term number 5 of the mediated settlement agreement awards Mr. Mullins a share of Ms. Mullins's retirement benefits up to the date of the divorce decree, not post-divorce retirement benefits. Accordingly, we conclude the record does not support Ms. Mullins's contention that the corrected divorce decree awards Mr. Mullins her post-divorce retirement benefits.

Ms. Mullins's second issue is decided against her.

### Pre–Marriage Retirement Benefits

In issue three, Ms. Mullins claims the trial court divested her of her separate property interest in her pre-marriage retirement benefits. She contends the mediated settlement agreement is ambiguous with regard to her pre-marriage retirement benefits or, in the alternative, any interpretation that it reaches her separate property interest was a mutual mistake because neither party contemplated the division of her retirement benefits included her pre-marriage retirement benefits. Although she does not frame her issue as a challenge to the trial court's conclusions of law, Ms. Mullins appears to challenge the following conclusions:

5. There is nothing in Texas law that prohibits a party from divesting himself of his separate property in a Mediated Settlement Agreement[.]

7. The law does not prohibit a party form [sic] divesting separate property prior to a trial nor from contracting to divest separate property in a [Mediated Settlement Agreement]. Parties may divest themselves of their separate property in a Mediated Settlement agreement [sic] and the law does not prohibit them from doing so. A unilateral mistake in a Mediated Settlement Agreement is not grounds for setting aside a Mediated Settlement Agreement.

9. The Paragraph that provides [Ms.] Mullins' [sic] retirement account(s) shall be split 50/50 between the parties, with the appropriate QDRO is clear and unambiguous.

10. Conflicting interpretations or expectations of the parties regarding the [Mediated Settlement Agreement] do not an ambiguity make.

11. Parol evidence is only admissible after an ambiguity is found to exist: and it cannot be used to create the ambiguity.

13. The court has no authority to modify the original disposition of the property.

15. If the written agreement is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous.

■ The Texas Family Code permits a trial court to refer a suit involving the dissolution of the marriage or affecting the parent-child relationship to mediation. *See* TEX. FAM.CODE ANN. §§ 6.602(a) (Vernon 2006), 153.0071(c) (Vernon Supp.2006); *see also Garcia–Udall v. Udall*, 141 S.W.3d

323, 327 (Tex.App.-Dallas 2004, no pet.). A mediated settlement agreement is binding on the parties if the agreement states in the appropriate font that it is not subject to revocation and is signed by both parties and their attorneys. *See* Tex. Fam. Code Ann. §§ 6.602(b), 153.0071(d). If a mediated settlement agreement meets these requirements then "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *See* Tex. Fam.Code Ann. §§ 6.602(c), 153.0071(e); *see also Garcia-Udall,* 141 S.W.3d at 327. Unilateral withdrawal of consent does not negate the enforceability of a mediated settlement agreement in divorce proceedings. *See Alvarez v. Reiser,* 958 S.W.2d 232, 234 (Tex. App.-Eastland 1997, writ denied).

 The trial court made detailed findings of fact in support of its conclusion of law.[1] These findings of fact are binding on

---

1. The trial court's findings of fact and conclusions of law include the following findings:
 9. The Mediated Settlement Agreement had the following Admonishments in all capital letters, in bold print and underlined:
 *"THE PARTIES HAVE BEEN ADVISED AND THEY FULLY UNDERSTAND THAT UPON EXECUTION OF EACH PARTY'S SIGNATURE TO THIS AGREEMENT AND THE EXECUTION OF EACH PARTY'S ATTORNEY, IF ANY, WHO IS PRESENT AT THE TIME THE AGREEMENT IS SIGNED, THIS AGREEMENT IS NOT SUBJECT TO REVOCATION* **(Section 6.602 and Section 153.0071 of the Texas Family Code)"**
 12. [Ms. Mullins's] Motion to Rescind the Mediated Settlement Agreement, alleged (1) there was a mistake made, (2) the Mediated Settlement Agreement would divest her of her Separate Property and (3) there was not a meeting of the minds. Thereafter [Ms. Mullins] filed an Amended Motion for New Trial and Motion for Reconsideration alleging a latent ambiguity. Term Number 5 of the [Mediated Settlement Agreement] is quoted in her Motion and Amended Motion for new trial [sic], to wit: "Wife's retirement account(s) shall be split 50/50 between the parties, the appropriate QDRO."
 13. In the Mediated Settlement Agreement both parties may have divested himself or herself of separate property but the court finds that divestiture was their agreement. At the time the Parties signed the Mediated Settlement Agreement there was a "meeting of the minds" as to the wording of the division of the separate and community property in the Mediated Settlement Agreement and to all issues pending before the court. At the time of the Mediated Settlement Agreement, [Mr. Mullins] believed that there was a meeting of the minds.
 14. [Ms. Mullins] did not allege the [Mediated Settlement Agreement] was the product of any fraud, duress or an illegal act by anyone and there has been no allegation or offer of evidence by [Ms. Mullins] that any fraud, duress or an illegal act was perpetrated by [Mr. Mullins, his attorneys, or the mediator].
 15. The court finds [Ms. Mullins] was not forced, threatened or coerced by anyone to enter in the [Mediated Settlement Agreement].
 16. The court finds no fraud duress or illegal act was committed by either party.
 17. The court finds that the parties entered into the [Mediated Settlement Agreement] of their own free will and accord and with the assistance, advice and approval of their attorneys and in the case of [Ms. Mullins] she also had the assistance of her attorney's legal assistant.
 18. The court finds that [Ms. Mullins] had her attorney and his paralegal with her through the entire mediation process.
 19. [Ms. Mullins] did not declare any retirement interest to be her separate property in any discovery documents filed with the court. It was not claimed as separate property in her Response to Rule 194 Disclosures, her Response to [Mr. Mullins's] Interrogatories, her Response to [Mr. Mullins's] Request for Admissions, or [Mr. Mullins's] Request for Production and in her Inventory and Appraisement she listed the Retirement as community property. The court further finds that in her Inventory and Appraisal and specifically the section where she has listed her separate property she did not list any interest in the Retirement.
 20. [Ms. Mullins] first claimed a separate property interest in the retirement on June

this Court because Ms. Mullins does not challenge them on appeal and they are supported by the record. *See McGalliard,* 722 S.W.2d at 696; *Toles,* 45 S.W.3d at 265 n. 6.

■ With regard to Ms. Mullins's claim that the corrected divorce decree varies from the terms of the mediated settlement agreement, the trial court found that it accurately follows the terms of the mediated settlement agreement. Also, the mediated settlement agreement met the requirements of Texas Family Code sections 6.602(b) and 153.0071(d) and was binding on Mr. Mullins and Ms. Mullins because the trial found the mediated settlement agreement contained the appropriate admonishments. *See* TEX. FAM.CODE ANN. §§ 6.602(b), 153.0071(d).

With regard to Ms. Mullins's argument that the mediated settlement agreement is erroneous because there was no meeting of the minds, the trial court specifically found that there was a meeting of minds. Also, the trial court found that the parties entered into the mediated settlement agreement of their own free will, i.e., there was no force, threat, coercion, fraud, duress, or illegal act, and with the advice of counsel. In addition, the trial court found that Ms. Mullins's evidence was not clear or convincing to establish she used separate property to repurchase a portion of her retirement benefits during her marriage. Further, the trial court found that Ms. Mullins listed her retirement benefits as community property in her sworn appraisal and did not claim a separate property interest in her retirement benefits until after the mediated settlement agreement was executed. *See Alvarez,* 958 S.W.2d at 234 (unilateral withdrawal of consent does not negate enforceability of mediated settlement agreement).

With regard to Ms. Mullins's contention that the mediated settlement agreement is erroneous because it is ambiguous, the trial court specifically found that it was Ms. Mullins's intention to transfer one half of all her interest in the Teacher Retirement System to Mr. Mullins. Also, the trial court found that the plain meaning of term number 5 in the mediated settlement is the total amount of Ms. Mullins's retirement benefits through the date of the decree.

10, 2004, well after the [Mediated Settlement Agreement] was executed on August 11, 2003.

21. There has been no subsequent or extraneous event that would render the term of the Mediated Settlement Agreement for the division of the retirement account(s) ambiguous. The plain meaning of term number 5 of the [Mediated Settlement Agreement] is the total amount of [Ms. Mullins's] retirement through the date of the decree.

22. [I]t appears from the [Mediated Settlement Agreement] and the contents of the court's file that there was valuable consideration for the transfer of the property between the parties. At the time of the mediation it was [Ms. Mullins's] intention to transfer one half of all her interest in the Teacher's Retirement System of Texas. There was no clear or convincing evidence that separate property was used to repurchase the portion of [Ms. Mullins's] Retire-

ment in August of 1986. Justice would not be served by granting a new trial.

23. The division of the property of [Mr. Mullins] and [Ms. Mullins] affected by the final judgment accurately follows the terms of the Mediated Settlement Agreement.

28. The court finds that at the June 10, 2004, hearing [Ms. Mullins] invoked attorney/client privilege when questioned about the meaning of term [number] 5 of the [Mediated Settlement Agreement]. The court allowed into evidence the email of the mediator which [Ms. Mullins] had offered and sustained [Ms. Mullins's] objection by prohibiting the testimony of the mediator. All evidence that [Ms. Mullins] offered on June 10, 2004, was allowed.

29. The negotiation of the property settlement were affected by the offers each party made at that time and the final agreement is the result of arms length negotiations.

Finally, the trial court found that there was no subsequent, extraneous event that would render term number 5 of the mediated settlement agreement ambiguous.

We conclude, based on the unchallenged findings of fact, that the corrected divorce decree does not vary from the terms of the mediated settlement agreement, there was a meeting of the minds, and the mediated settlement agreement is not ambiguous. Ms. Mullins's third issue is decided against her.

### Denial of Motions

 In her fourth issue, Ms. Mullins argues the trial court abused its discretion when it denied her motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and first corrected QDRO. She claims the trial court abused its discretion when it denied her motions for the same reasons she claimed the trial court erred when it entered the corrected divorce decree in her first and second issues, which we have already addressed. However, her fourth issue also appears to challenge the trial court's following conclusion of law:

6. [Ms. Mullins] offered no evidence to support the Motion for New Trial. There was no testimony from any witness offered and there were no exhibits introduced in support of the Motion for New Trial, except the contents of the court's file.

The trial court made the following finding of fact, which Ms. Mullins does not challenge and is supported by the record:

22. [Ms. Mullins] has not presented any evidence of a meritorious defense as set out in Paragraph # 8 in her Amended Motion for New Trial and Motion for Reconsideration. [Ms. Mullins] has not presented any evidence that granting a

new trial would not harm [Mr. Mullins]. . . .

We conclude, based on the unchallenged findings of fact, the trial court did not err when it denied Ms. Mullins's motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and first corrected QDRO. Ms. Mullins's fourth issue is decided against her.

### TYPOGRAPHICAL ERRORS IN CORRECTED DIVORCE DECREE AND QDRO

Mr. Mullins seeks modification of the corrected divorce decree and second corrected QDRO to correct typographical errors. Ms. Mullins agrees there are typographical errors in the corrected divorce decree.

In the corrected divorce decree, the parties agree that "as of this date" should be modified to read "as of June 10, 2004" in the following paragraph:

H–5. 50% of all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to Teachers Retirement System of Texas or other benefits existing by reason of [Ms. Mullins's] past employment **as of this date** and more particularly defined in a [QDRO] signed by the Court on the day this Final Decree of Divorce is signed.

[emphasis added].

We have the authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R.App. p. 43.2(b); *In re D.R.*, 193 S.W.3d 924, 926 (Tex.App.-Dallas 2006, no pet.).

Accordingly, we modify paragraph H–5 of the corrected divorce decree to delete the language "as of this date" and replace it with "as of June 10, 2004." Mr. Mullins's request to modify the second corrected QDRO is moot because we determined the trial court lacked jurisdiction to enter the second corrected QDRO and the typographical errors complained of do not appear in the first corrected QDRO.

## CONCLUSION

The Court strikes the second supplemental clerk's record from the record on appeal.

The trial court did not have jurisdiction to enter the second corrected QDRO. The trial court's second corrected QDRO issued on December 29, 2004 is vacated. The trial court's first corrected QDRO issued on September 7, 2004 is reinstated.

The trial court did not err when it entered the corrected final decree of divorce. The trial court's corrected final decree of divorce is modified so that paragraph H–5 reads as follows:

> H–5. 50% of all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to Teachers Retirement System of Texas or other benefits existing by reason of [Ms. Mullins's] past employment as of June 10, 2004 and more particularly defined in a [QDRO] signed by the Court on the day this Final Decree of Divorce is signed.

The corrected final decree of divorce is affirmed, as modified.

The trial court's orders denying Ms. Mullins's motion to rescind the mediated settlement agreement, motion for new trial, motion for reconsideration, and motion to modify the corrected divorce decree and first corrected QDRO are affirmed.