Opinion issued May 30, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-01094-CV

_____

## IN THE INTEREST OF J.Q.J., A MINOR CHILD

On Appeal from the 315th District Court
Harris County, Texas
Trial Court Case No. 2018-00151J

## MEMORANDUM OPINION

A.J.B. (Mother) is appealing the trial court's decree terminating her parental rights to her son, J.Q.J. (Jerry). On appeal, Mother argues that there is legally and factually insufficient evidence supporting the trial court's findings that (1) she committed the predicate acts under Family Code subsections 161.001(b)(1)(N) and (O); (2) she did not prove her affirmative defense to termination under section

161.001(b)(1)(d); and (3) termination of her parental rights is in Jerry's best interest. *See* TEX. FAM. CODE § 161.001(b)(1)(N) & (O), 161.001(b)(2). We modify the trial court's order and affirm as modified.

## Background

Mother tested positive for marijuana when Jerry was born in August 2017. The Department received a referral of physical abuse around that time and gave it the disposition of "Reason to Believe–Active Case." The Department received another referral on December 5, 2017 for neglectful supervision of Jerry but that was "Ruled Out." On January 10, 2018, the Department received a second referral of neglectful supervision of Jerry. According to the referral, Mother and Jerry's presumed father, David,[1] were physically fighting while 5-month-old Jerry was present.

On January 12, 2018, the Department filed its Original Petition for Protection of a Child for Conservatorship, and For Termination in Suit Affecting the Parent-Child Relationship. According to the removal affidavit filed in support of the petition, the Department made the following observations from a video recording of the January 10th altercation:

> [David was] yelling, screaming profanities and throwing objects at [Mother] as he literally terrorized everyone in the household. It was observed on the video that [David] physically grabbed [Mother] by the

---

[1] Although David was listed on Jerry's birth certificate, DNA testing later showed David was not Jerry's biological father.

neck and was dragging her down the hallway toward her bedroom. It was observed that several family members in the household attempted to restrain [David] but were unable to. It was also observed that eventually he cornered [Mother] in the bedroom and she was able to grab a hammer that was nearby and began to swing profusely at [David].

It was also reported that aggravated assault took place in the home, whereby [Mother] assaulted the father with a hammer.

After a full adversary hearing on January 23, 2018, the trial court appointed the Department as Jerry's temporary managing conservator. The court also signed an order in which it found that there was a continuing danger to the child, that for the child to remain in his parents' care was contrary to his welfare, and that despite reasonable efforts made by the Department to avoid removing the child, allowing him to continue residing in their home was contrary to his welfare. *See* TEX. FAM. CODE § 262.201. The court also included a warning in the order that Mother's failure to fully comply with the court's orders could result in restriction or termination of her parental rights.

The trial court held a status hearing on March 12, 2018. After the hearing, the court signed an order stating that it had reviewed the family service plan created for Mother by the Department, found it reasonable, and made the plan a part of the court's orders. *See* TEX. FAM. CODE § 263.106. The court also found that Mother had reviewed the terms of her plan and understood it. Moreover, both the court's order and Mother's plan contain the statutorily required admonishment that the purpose of

3

the plan was to assist her in creating a safe environment for the child, and that should she fail to demonstrate the ability to do so, her parental rights could be restricted or terminated. *See* TEX. FAM. CODE § 263.102(b).

Mother's service plan outlines the reason for the Department's involvement with the child and the Department's initial concerns. Jerry came into the Department's care after a January 10, 2018 neglectful supervision referral due to domestic violence between Mother and David. The Department was initially concerned about Jerry's safety because he was less than one year old, very vulnerable, and unable to protect himself, and therefore, he needed appropriate caregivers to ensure that his basic needs were met. According to the Department, the parents' drug use and history of domestic violence posed a risk to Jerry's protection and safety.

On July 25, 2018, the trial court held a permanency hearing and issued an order suspending Mother's visitations with Jerry "until such time that she can produce a clean drug result."

A bench trial was held on October 22, 2018. Mother participated by phone because was not able to attend due to transportation issues.

Jerry's Department caseworker, Allanti Ford, testified that Jerry came into the Department's care after they received a referral of neglectful supervision of Jerry in January 2018 alleging an instance of domestic violence between Mother and David.

Jerry, who was five months old, was present in the home when the altercation occurred. According to Ford, Mother also tested positive for marijuana when Jerry was born.

Jerry was placed with his maternal grandmother in September 2018. The grandmother resides in Georgia. Ford testified that the placement is going great. According to Ford, Jerry is a healthy one-year old who is being well taken care of and has adjusted well to the placement. Ford confirmed that the grandmother is meeting all of Jerry's physical and emotional needs and she plans to adopt him if the court terminated Mother's parental rights. Ford testified that Jerry's grandmother has her own home and has the means to support him, with or without financial assistance from Mother. According to Ford, Jerry is surrounded by extended family in his current placement, including an aunt, an uncle, and cousins, all of whom adore him and are excited and happy to have him in the home.

Ford also testified that the Department prepared a family service plan that identified several requirements that Mother had to complete before Jerry could be returned to her care. Among other things, Mother was required to (1) attend all court hearings, permanency conferences, and family visits with Jerry; (2) submit to random urine analysis drug testing and test negative every time (failure to appear for the test is considered a positive test result); (3) cooperate in a psychological evaluation and follow all of the evaluation's recommendations; (4) participate and

5

successfully complete parenting classes, the Batterers Intervention and Prevention Program (BIPP), and anger management classes; (5) provide the Department with a certificate of completion for each program and demonstrate skills that she learned from these programs during her visits with Jerry and conversations with his caseworker; (6) attend NA/AA meetings/12 step program, acquire a sponsor, and provide supporting documentation to the Department; (7) acquire and maintain employment and provide documentation to caseworker; and (8) acquire and maintain stable housing for more than six months. BIPP and anger management programs were required because of the domestic violence allegationthat resulted in Jerry coming into the Department's care.

Ford testified that Mother did not complete any of her services other than finding employment, and Mother did not provide any certificates of completion. Ford believes that Mother can pay child support. According to Ford, the last time Mother visited with Jerry was in March or April 2018. The trial court suspended Mother's visitation on July 25, 2018, pending proof of a clean drug test. Ford testified that Mother did not attempt to contact or communicate through phone calls or cards or presents or anything else after her visitation was suspended. When asked if Mother was attending visits with Jerry before the suspension, Ford testified, "Yes, just a few of them." Ford also stated that Jerry is currently placed with his maternal grandmother, and that although the grandmother and Mother are in contact, she does

not know if they discuss Jerry during these phone calls. Ford opined that Mother had failed to maintain significant contact with Jerry during the case.

The permanency report, which was admitted into evidence without objection, details the various ways that Mother failed to comply with her court-ordered service plan, including that Mother failed to: (1) appear for thirteen court-ordered drug tests between February and September 2018; (2) attend four court hearings and two parent-child visits before her visitation rights were suspended in July 2018, tpending proof of a clean drug test result; (3) participate in, and provide certificates of completion for, parenting classes,[2] anger management classes, and the domestic violence prevention program; (4) attend NA/AA meetings, acquire a sponsor, and provide supporting documentation; and (5) participate in a psychological evaluation, and follow all recommendations from the evaluation. On June 3, 2018, Mother admitted to the Department that she used marijuana to relieve her stress.

Danielle Dempster, Jerry's Child Advocates volunteer, testified that Child Advocates recommended that Mother's parental rights be terminated based on Jerry's young age, Mother's history of substance abuse, Mother's failure to complete services, and Mother's failure to show that she can provide Jerry with a safe and stable environment. Dempster further testified that Jerry was living with his maternal

---

[2]     Mother told the Department that she completed parenting classes, but she did not provide a certificate of completion.

7

grandmother. According to Dempster, Jerry's grandmother is very happy to have Jerry living with her and Jerry is doing very well in his current placement.

Mother did not testify at trial.

On November 20, 2018, the trial court signed a decree naming the Department as Jerry's sole managing conservator and terminating Mother's parental rights to Jerry pursuant to Texas Family Code sections 161.001(b)(1)(N) and (O).

## Sufficiency of the Evidence

In four issues, Mother argues on appeal that there is legally and factually insufficient evidence supporting the trial court's findings that: (1) she committed the predicate acts under sections 161.001(b)(1)(N) and (O); (2) she did not prove her affirmative defense to termination under section 161.001(d); and (3) termination of her parental rights is in Jerry's best interest. *See* TEX. FAM. CODE § 161.001(b)(1)(N) & (O), 161.001(b)(2).

### A.    Standard of Review and Applicable Law

A parent's right to the care, custody, and control of her child is a liberty interest protected under the Constitution, and we strictly scrutinize termination proceedings on appeal. *See Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support an involuntary termination. *Holick*, 685 S.W.2d at 20 (citing *Santosky*, 455 U.S. at 747–48).

Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). Thus, we do not re-weigh issues of witness credibility but defer to the factfinder's reasonable determinations of such matters. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

In conducting a legal-sufficiency review in an appeal from a termination case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *See id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *See id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we determine whether, considering the entire record, including evidence both

9

supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the dispute in favor of its finding. *See In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* at 266.

To prevail in a termination case, the Department must establish that one or more of the acts or omissions enumerated under Texas Family Code subsection 161.001(b)(1) occurred and that the termination is in the best interest of the child, pursuant to subsection 161.001(b)(2). *See* TEX. FAM. CODE § 161.001(b); *see also In re C.H.*, 89 S.W.3d at 23.[3]

---

[3] "Only one predicate finding under section [161.001(b)(1)] is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

**B.** **Sufficiency of the Evidence Supporting Termination of Mother's Rights Pursuant to Subsection 161.001(b)(1)(N)**

In her first issue, Mother argues that there is legally and factually insufficient evidence supporting the trial court's finding that she committed a predicate act under subsection 161.001(b)(1)(N). *See* TEX. FAM. CODE. § 161.001(b)(1)(N).

Subsection 161.001(b)(1)(N) states that a parent's rights can be terminated if there is clear and convincing evidence that the parent has:

> [C]onstructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Family Service for not less than six months, and:
>
> i. The department has made reasonable effort to return the child to the parent;
>
> ii. The parent has not regularly visited or maintained significant contact with the child; and
>
> iii. The parent has demonstrated an inability to provide the child with a safe environment.

*Id.* The only element Mother challenges on appeal is the sufficiency of the evidence supporting the trial court's finding that she had "not regularly visited or maintained significant contact with" Jerry. Specifically, Mother argues that the Department did not meet its burden because Jerry's caseworker testified that Mother had phone contact with Jerry's current placement, Mother's mother, and Mother visited with Jerry on three occasions before the trial court suspended her visitation. Mother further contends that Jerry's placement in Georgia prohibited more face-to-face visits and that telephone contact was of limited benefit given Jerry's young age.

11

The record reflects that Jerry came into the Department's care in January 2018 and that Mother visited with Jerry only three times before her visitation rights were suspended on July 25, 2018. Although the record reflects that Mother missed one visit in March due to transportation issues, there is no evidence in the record explaining why Mother failed to attend any of the other scheduled visits. The trial court suspended Mother's visitation until she provided the court with a clean drug test result. She did not appear for any court-ordered drug test while Jerry was in the Department's care, including four post-suspension tests. The record also reflects that Mother's visitation was still suspended when Jerry moved to Georgia in September 2018, approximately one month before trial.

After reviewing all the evidence in the light most favorable to the trial court's finding, including evidence that Mother visited with her infant son only three times while he was in the Department's care, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Mother had failed to regularly visit or maintain significant contact with Jerry and, therefore, she had constructively abandoned Jerry under section 161.001(b)(1)(N). *See id.* Accordingly, we hold that the evidence is legally sufficient to support the trial court's finding.

Viewing the evidence in a light favorable to the factfinder, including evidence both supporting and contradicting the finding, we conclude that the contrary evidence at trial is not so overwhelming as to undermine the trial court's firm

conviction that Mother failed to regularly visit or maintain significant contact with Jerry and, therefore, she constructively abandoned Jerry under section 161.001(b)(1)(N). *See id.*; *see also In re C.H.*, 89 S.W.3d at 25. Accordingly, we hold that the evidence is factually sufficient to support the trial court's finding.

We overrule Mother's first issue.

**C.    Sufficiency of the Evidence Supporting Termination of Mother's Rights Pursuant to Subsection 161.001(b)(1)(O)**

In her second issue, Mother argues that there is legally and factually insufficient evidence supporting the trial court's finding that she committed a predicate act under subsection 161.001(b)(1)(O).

Subsection 161.001(b)(1)(O) states that a parent's rights can be terminated if there is clear and convincing evidence that the parent has:

> [F]ailed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE. § 161.001(b)(1)(O). Thus, pursuant to subsection (O), the Department must prove that: (1) it has been the child's temporary or permanent managing conservator for at least nine months; (2) it took custody of the child as a result of a removal from the parent under Chapter 262 for abuse or neglect; (3) a court issued an order establishing the actions necessary for the parent to obtain the

13

return of the child; and (4) the parent did not comply with the court order. *See In re J.M.T.*, 519 S.W.3d 258, 266 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing TEX. FAM. CODE. § 161.001(b)(1)(O)). Substantial or partial compliance with a court-ordered family service plan is generally insufficient to avoid termination pursuant to subsection (O). *See id.* at 267–68; *see also In re M.C.G.*, 329 S.W.3d 674, 676 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("The Family Code does not provide for substantial compliance with a family service plan."). A parent's failure to complete even one requirement of her family service plan in some cases supports termination under this subsection. *See In re J.M.T.*, 519 S.W.3d at 267; *see also In re M.C.G.*, 329 S.W.3d at 675–76. However, "when questions of compliance and degree are raised, and the trial court declines to terminate on this ground, the evidence is not conclusive; it is disputed." *In re S.M.R.*, 434 S.W.3d 576, 584 (Tex. 2014) (rejecting Department's argument that it had conclusively established subsection (O) as a ground for termination in face of conflicting evidence). Whether a parent has "done enough under" under subsection (O) to comply with a court order is generally a fact question. *Id.*

It is undisputed that Jerry was removed from Mother's care pursuant to Chapter 262 of the Family Code for abuse or neglect in January 2018 and Jerry remained in the Department's care for more than nine months. It is also undisputed that Mother was ordered to comply with a family service plan and she was warned

14

that her failure to comply could result in restriction of her parental rights or termination of her parental rights. The only disputed element is whether Mother complied with her court-ordered family service plan.

On appeal, Mother argues that there is insufficient evidence supporting the termination of her parental rights under subsection (O) because she was employed throughout the case, she participated in drug treatment, and there was no evidence that she had been convicted of a crime.[4]

Jerry's caseworker, however, testified that other than finding employment, Mother had not completed any of her services and she did not provide any certificates of completion. The permanency report, which was admitted into evidence without objection, details the various ways that Mother failed to comply with her court-ordered service plan, including: Mother's failure to: (1) appear for thirteen court-ordered drug tests between February and September 2018; (2) attend four court hearings and two parent-child visits before her visitation rights were suspended pending proof of a clean drug test result in July 2018; (3) participate in, and provide certificates of completion for, parenting classes,[5] anger management classes, and the domestic violence prevention program; (4) attend NA/AA meetings,

---

[4]    The record reflects that Mother was charged with possession of marijuana before Jerry was born, but the charge was dismissed.

[5]    Mother told the Department that she completed parenting classes, but she did not provide a certificate of completion.

acquire a sponsor, and provide supporting documentation; and (5) participate in a psychological evaluation, and follow all recommendations from the evaluation.

Here, although the evidence showed that she completed some of the plan's requirements, the evidence showed that Mother did not comply with most of the requirements of her court-ordered service plan. *See In re J.M.T.*, 519 S.W.3d at 267–68 (rejecting parent's argument that evidence supporting trial court's predicate finding under subsection (O) was insufficient because there was evidence parent partially complied with family service plan); *see also In re M.C.G.*, 329 S.W.3d at 675–76 (stating that parent's failure to complete one requirement of her service plan supports termination).

After reviewing all the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Mother failed to comply with her court-ordered family service plan, as required by section 161.001(b)(1)(O). *See In re J.F.C.*, 96 S.W.3d at 266; *see generally In re J.M.T.*, 519 S.W.3d at 267–68. Accordingly, we hold that the evidence is legally sufficient to support the trial court's finding.

Viewing the evidence in a light favorable to the factfinder, including evidence both supporting and contradicting the finding, we conclude that the contrary evidence at trial is not so overwhelming as to undermine the trial court's firm conviction that Mother failed to comply with her court-ordered family service plan,

16

as required by section 161.001(b)(1)(O). *See In re J.F.C.*, 96 S.W.3d at 266; *see generally In re S.M.R.*, 434 S.W.3d at 584 (stating that whether parent has "done enough under" subsection (O) to comply with court order is generally fact question for trial court). Accordingly, we hold that the evidence is factually sufficient to support the trial court's finding.

We overrule Mother's second issue.

## D.     Sufficiency of the Evidence Supporting Mother's Defense to Termination Pursuant to Subsection 161.001(d)

In her third issue, Mother argues that, even if there was sufficient evidence to support the predicate finding under 161.001(b)(1)(O), the trial court nevertheless erred by terminating her parental rights based on this finding because she made a good faith effort to comply with the court order. *See* TEX. FAM. CODE § 161.001(d).

The Texas Family Code establishes a single affirmative defense to termination for failure to comply with a court order:

> A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that:
>
> (1) the parent was unable to comply with specific provisions of the court order; and
>
> (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

17

*Id.*; *see also In re A.J.H.*, No. 01-18-00673-CV, 2019 WL 190091, at *6–7 (Tex. App.—Houston [1st Dist.] Jan. 15, 2019, no pet.) (mem. op.).

Mother argues that she was not able to complete her family services plan, "in part due to transportation issues," and there is no evidence that the Department provided her with transportation assistance even though Jerry's caseworker knew that she had transportation issues.

The permanency report states that Mother "did not show for court on 3/8/2018 due to oversleeping and no transportation" and she "missed [her] parent child visit on 3/13/2018 due to transportation." Mother's counsel also informed the court that Mother was unable to attend the final hearing due to transportation problems. There is no evidence, however, that Mother's alleged lack of transportation is not attributable to any fault of hers. *See In re A.J.H.*, 2019 WL 190091, at *7 (holding trial court's findings that parent failed to raise and prove statutory defense under section 161.001(d) was supported by legally and factually sufficient evidence because parent did not put on evidence supporting defense).

As previously discussed, there is also unrefuted evidence in the record that Mother failed to comply with her service plan in multiple other ways and on several occasions. For example, Mother failed to appear for court on three other occasions, she missed three psychological appointments, and she failed to appear for thirteen court-ordered drug tests. Mother also failed to complete multiple court-ordered

programs, e.g., anger management classes and a domestic violence prevention program, and she failed to provide the Department with certificates of completion for any required program. There is no evidence that Mother's noncompliance in these other instances was due to transportation issues or any other reason that arguably cannot be attributable to her. Any one of these failures to comply would be sufficient to support termination of Mother's parental rights under subsection (O). *See In re J.M.T.*, 519 S.W.3d at 267 ("A parent's failure to complete one requirement of her [family service plan] supports termination under subsection (O).").

Accordingly, we conclude that there is sufficient evidence supporting the trial court's finding that Mother failed to prove her statutory defense by a preponderance of the evidence. *See* TEX. FAM. CODE § 161.001(d).

We overrule Mother's third issue.

## E.   Best Interest

In her fourth issue, Mother argues that there is legally and factually insufficient evidence supporting the trial court's finding that termination of her parental rights is in Jerry's best interest.

There is a strong presumption that the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment,

however, is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best-interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best interest finding: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). This list of factors is not exhaustive, however, and evidence is not required on all the factors to support a finding that terminating a parent's rights is in the child's best interest. *See id.*; *see also In re D.R.A.*, 374 S.W.3d at 533.

The Texas Family Code also sets out similar factors to be considered in evaluating the parent's willingness and ability to provide the child with a safe

20

environment, including: the child's age and physical and mental vulnerabilities; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. *See* TEX. FAM. CODE § 263.307(b); *see generally In re R.R.*, 209 S.W.3d at 116.

Courts may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence when conducting the best interest analysis. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Evidence supporting termination under one of the predicate grounds listed in section 161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest). A parent's past conduct is probative of his future conduct when evaluating the child's best interest. *See In re O.N.H.*, 401 S.W.3d at 684; *see also Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("Evidence that a person has engaged in abusive conduct in the past permits

an inference that the person will continue violent behavior in the future."). A factfinder may also infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent when assessing the best interest of the child. *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) (citing *In re B.K.D.*, 131 S.W.3d 10, 17 (Tex. App.—Fort Worth 2004, pet. denied)).

Jerry, who was removed from Mother's care when he was five months old because of domestic violence in the home and Mother's drug use, is currently placed with his maternal grandmother. The grandmother wanted Jerry to be placed with her when he first came into care and she plans to adopt him when Mother's parental rights are terminated. Jerry is surrounded by extended family in his current placement, including an aunt, an uncle, and cousins, all of whom adore him and are excited and happy to have him in the home. He has adjusted well to his new environment and he is reaching all his developmental milestones. Jerry's grandmother also has her own home and has the means to support him, with or without financial assistance from Mother. By all accounts, Jerry's grandmother is meeting his current emotional, financial, and physical needs, and the Department believes she will be able to do so in the future. *See generally In re O.N.H.*, 401 S.W.3d at 684 (stating past conduct is probative of parent's future conduct when evaluating child's best interest). There is nothing in the record indicating otherwise.

The trial court could also infer from this evidence that Jerry's grandmother is able to provide him with a stable, safe, and permanent home, which is a paramount consideration in a court's best-interest determination. *See* TEX. FAM. CODE § 263.307(a); *see also In re K.C.*, 219 S.W.3d at 931.

The record also reflects that Jerry was only a little over a year old at the time of trial, and that Mother had not addressed the risks that brought her infant son into the Department's care, i.e., domestic violence and drug use, despite the availability of the programs offered to her for this purpose. For example, Mother was required to take anger management classes and a domestic violence prevention program because Jerry was removed from her care as the result of a violent altercation between her and Jerry's presumed father. Mother does not dispute that she did not complete either program. The trial court could reasonably infer from this evidence that Mother could continue to be involved in violent and inappropriate illegal behaviors in the future and that could pose a danger to Jerry's emotional and physical well-being. *See Jordan*, 325 S.W.3d at 724; *In re D.M.*, 452 S.W.3d at 471.

The record also reflects that Mother tested positive for marijuana when Jerry was born, and Mother reported to the Department that she used marijuana to relieve stress in June 2018, five months after Jerry came into the Department's care. Despite the Department's concerns about her continued drug use, Mother did not appear for any court-ordered drug tests while Jerry was in the Department's care, even after her

23

visitation with Jerry was suspended pending proof of a clean drug test result. Despite being required to do so, Mother also did not complete drug treatment or attend NA/AA meetings. The trial court could reasonably infer from this evidence that Mother is unwilling or unable to effect positive environmental and personal changes in her life within a reasonable period of time. This factor supports the trial court's best interest finding. *See* TEX. FAM. CODE § 263.307(b).

Although Mother told the Department that she completed parenting classes, she did not provide a certificate of completion. Jerry's caseworker and his Child Advocate volunteer also testified that Mother had not demonstrated that she could provide Jerry with a safe and stable environment. These factors also support the trial court's best interest finding. *See* TEX. FAM. CODE § 263.307(b); *Holley*, 544 S.W.2d at 371–72.

Furthermore, there was no showing that the Mother maintained a close relationship with Jerry while he was in the Department's care: she only visited him three times while this case was pending, and she did not take any steps to have her visitation rights reinstated after they were suspended in July, or otherwise inquire about his well-being. *See generally In re C.H.*, 89 S.W.3d at 28 (stating that evidence supporting termination under one predicate ground can also be considered in support of finding that termination is in child's best interest).

24

Mother argues that the termination of her parental rights is not in Jerry's best interest because she is employed and able to help support him financially. She also argues that it is likely that she and her Mother—Jerry's current placement—will be able to work together to raise Jerry. Mother, however, does not cite to any evidence in the record that it is likely that she and her mother can work together to raise Jerry. There is also no evidence that Mother provided any clothes, gifts, or other items for Jerry while he was in the Department's care, despite having stable employment and steady income. Furthermore, these are only some of the factors that courts consider when conducting a best-interest analysis and they are not so significant as to overcome the other factors supporting the trial court's finding that termination of Mother's parental rights is in Jerry's best interest, including Mother's failure to address the risks that brought Jerry into the Department's care as discussed above.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in Jerry's best interest. *See In re J.O.A.*, 283 S.W.3d at 345. Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination of Mother's parental rights is in Jerry's best interest. *See id.* Accordingly, we hold that legally and factually sufficient evidence supports the trial court's best interest finding.

We overrule Mother's fourth issue.

## Modification

The final decree inaccurately states that Jerry is "female." The record affirmatively reflects that Jerry is "male." We have the authority to modify incorrect judgments when the necessary information is available to do so. *See* TEX. R. APP. P. 43.2(b); *Mullins v. Mullins*, 202 S.W.3d 869, 878 (Tex. App.—Dallas 2006, pet. denied). Accordingly, we reform paragraph 6 of the decree to delete the word "female" and replace it with the word "male."

## Conclusion

We reform the trial court's decree terminating Mother's parental rights to Jerry and we affirm as modified.

Russell Lloyd
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.

26