# NO. 12-22-00110-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *UNITED FIRE LLOYDS,* *APPELLANT* | § | *APPEAL FROM THE 145TH* |
| | § | *DISTRICT COURT* |
| *V.* | | |
| | § | *NACOGDOCHES COUNTY, TEXAS* |
| *INNER PIPE PIPELINE, LLC,* *APPELLEE* | | |

## *MEMORANDUM OPINION*

United Fire Lloyds (UFL) appeals the trial court's judgment in favor of Inner Pipe Pipeline, LLC. UFL presents seven issues on appeal. We affirm.

## BACKGROUND

On May 16, 2016, a fire occurred at Inner Pipe. At the time of the fire, Inner Pipe was insured by commercial property, commercial automobile, and inland marine policies issued by UFL. Those policies included fire coverage. After Inner Pipe filed claims under the policies, UFL denied coverage. UFL asserted that Inner Pipe's owner, Edward Dailey, intentionally set the fire and made misrepresentations of material facts in the proof of loss. As a result, Inner Pipe filed suit asserting causes of action for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violations of the Deceptive Trade Practices Act, and fraud. The extracontractual claims were severed into a separate action and abated pending resolution of the breach of contract claim. UFL counterclaimed that Dailey intentionally set the fire, committed fraud, and made misrepresentations that voided the policies. Following a bench trial, the trial court found in favor of Inner Pipe and against UFL. The trial court also issued findings of fact and conclusions of law. In so doing, the trial court found that UFL breached the insurance contract and Inner Pipe suffered damages. It also concluded that

UFL failed to prove arson, prejudice, and fraud. As a result, it awarded Inner Pipe $1,504,900 in actual damages and $883,277 in attorney's fees. This appeal followed.

<u>STANDARD OF REVIEW AND APPLICABLE LAW</u>

In an appeal from a judgment after a bench trial, we accord the trial court's findings of fact the same weight as a jury's verdict. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 302 (Tex. App.—Houston [1st Dist.] 2009, no. pet.); *see Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *Walker v. Anderson*, 232 S.W.3d 899, 907 (Tex. App.—Dallas 2007, no pet.); *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Mullins v. Mullins*, 202 S.W.3d 869, 874, 876-77 (Tex. App.—Dallas 2006, pet. denied). However, when an appellant contests a trial court's findings of fact, an appellate court reviews those fact findings by the same standards it uses to review the sufficiency of the evidence to support a jury's findings. *See Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied).

To determine whether legally sufficient evidence supports a challenged finding, we must consider evidence that favors the finding if a reasonable factfinder could consider it, and we must disregard evidence contrary to the challenged finding unless a reasonable factfinder could not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We sustain a legal insufficiency, or "no evidence," point when the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id*. at 810. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 203 (Tex. App.—Texarkana 2008, no pet.) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

2

When reviewing a finding of fact for legal sufficiency, we may set aside the finding only if the evidence at trial would not enable a reasonable and fair-minded finder of fact to make the finding under review. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet. denied) (citing *City of Keller*, 168 S.W.3d at 827). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *See id.* The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id*. The finder of fact is free to believe one witness and disbelieve another, and a reviewing court may not impose its own opinions to the contrary. *See id*. Accordingly, reviewing courts must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. *Id*. If a reasonable finder of fact could have so found, we must assume that the finder of fact chose what testimony to disregard in a way that was in favor of the findings. *Id*. A finder of fact "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *Id*. (quoting *City of Keller*, 168 S.W.3d at 819–20).

In addition, it is within the fact finder's province to resolve conflicts in the evidence. *Id*. Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id*. Where a reasonable finder of fact could resolve conflicting evidence either way, we must presume the finder of fact did so in favor of the findings. *Id*. Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id*. Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id*.

With regard to factual sufficiency challenges, where a party who had the burden of proof asserts that a trial court's finding is contrary to the evidence, it must show the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

We review conclusions of law by the trial court de novo. *Brown*, 236 S.W.3d at 348. "Failing to correctly apply the law is an abuse of discretion." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 694 (Tex. 2007). We affirm the judgment if it can be upheld on any legal theory supported by the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

In an insurance case, the insured has the initial burden to establish that its claim falls within coverage under the terms of the policy. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insured proves coverage, then the insurer must prove the loss is within an exclusion to avoid coverage. *Id.* If the insurer proves an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Id.*

## ARSON

In its first issue, UFL challenges the trial court's conclusion that it failed to prove arson. It argues in its second issue that the trial court applied an incorrect evidentiary standard for arson. And in its third issue, UFL challenges the trial court's findings that it failed to prove arson.

### Evidentiary Standard

UFL urges that the trial court applied the incorrect evidentiary standard for arson and incendiary origin in conclusion of law five, which states the following:

> 5. A party may prove, solely through other circumstantial evidence, that a fire had an incendiary origin without expert findings of incendiary origin based on physical evidence such as burn patterns, presence of exotic accelerants, multiple ignition sites, etc.

UFL urges that this means the trial court required it to present physical evidence such as burn patterns, presence of exotic accelerants, and multiple ignition sites. However, a plain reading of conclusion five shows that the trial court determined that expert findings on physical evidence are unnecessary, and a party may prove incendiary origin via other circumstantial evidence. As a result, we overrule UFL's second issue.

### Sufficiency

In its first and third issues, UFL urges that the trial court's findings of fact and conclusions of law regarding its arson defense are factually insufficient.

In conclusion of law six, the trial court found that UFL "failed in its burden to prove the essential elements of an arson defense." UFL also attacks the following factual findings regarding its arson defense:

> 4. UFL has failed in its burden to establish that the fire at the Inner Pipe Pipeline facility was an incendiary fire.
> 5. UFL has failed in its burden to establish that either Inner Pipe Pipeline or its agent, Ed Dailey, intentionally ignited the fire under circumstances in which the person igniting the fire knew the fire should not have been ignited.

4

6. UFL has failed in its burden to establish that Inner Pipe Pipeline or its agent, Ed Dailey, committed arson.

To establish the affirmative defense of arson, UFL was required to show that (1) the fire had an incendiary origin; (2) Dailey had a motive to set the fire or cause it to be set; and (3) Dailey had an opportunity to set the fire or other circumstances link Dailey to the fire. *See Routis v. Clarendon Am. Ins. Co., Inc.*, No. 01-06-00459-CV, 2007 WL 1412566, at *5 (Tex. App.—Houston [1st Dist.] May 10, 2007, no pet.) (mem. op.) (citing *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 45 n.1 (Tex. 1998)). The trial court's findings explicitly cite the first element of the arson defense; therefore, we only address the incendiary origin element.

The fire experts all testified that "incendiary" according to the National Fire Protection Agency is defined as a "fire that is intentionally ignited under circumstances in which the person igniting the fire knows the fire should not be ignited." Inner Pipe's expert, Carl Finocchiaro, and UFL's fire expert, David Cook, testified to essentially the same facts and circumstances. Both Finocchiaro and Cook testified that the fire originated in the engine compartment of a Chevrolet Silverado in the building. However, they were unable to determine the exact cause. Due to the heat of the fire, several of the truck's electrical components were destroyed and unable to be examined. As a result, the investigators were unable to rule out a cold engine fire as a cause. The fire marshal also testified that he could not determine if a crime occurred based on the evidence. Each of the experts and investigators classified the fire's cause as "undetermined," and found that the fire was either incendiary or a cold engine fire. Therefore, to meet its burden that the fire was incendiary, UFL relied on other circumstantial evidence.

Kenneth Kaufman, UFL's corporate representative, testified that UFL contends the fire was intentionally set and that Dailey was involved. When asked what evidence UFL believes led to its arson conclusion, Kaufman cited to several circumstances: (1) the location of equipment in the building was suspicious, (2) the Silverado was wedged between two drillers that are not ordinarily kept in the shop, (3) one of the drillers needed repairs, was taken to a repair shop, after the shop prepared an estimate, Dailey instructed them to reconstruct the machine and Inner Pipe would repair it in house, and the driller had not been repaired at the time of the fire, and (4) there was a vast amount of hydraulic fluid in the shop at the time of the fire, along with the barrels not in their normal location. Kaufman also identified inconsistencies between Dailey's timeline and the 911 recording. For example, Dailey told the 911 operator that he was getting into his truck,

but the audio expert testified that no sounds associated with entering a truck or cranking it are heard on the tape. Additionally, Kaufman stated that several sentimental items were missing or not located in their usual place in the shop. Specifically, Dailey and his girlfriend had just returned from out of town. Her car had been in the building while they were gone. Instead of driving her car home, Dailey had her drive one of his trucks. Kaufman further opined that the records showed that Inner Pipe was in financial distress.

In its brief, UFL extensively cites to the evidence supporting its contention that Dailey intentionally set the fire, but ignores the evidence supporting the trial court's finding that UFL failed in its burden to show that this was an incendiary fire. The evidence at trial included that the firefighters recovered cash from the burned building. In addition, Dailey's furniture and clothing, Inner Pipe's business records, Dailey's girlfriend's car, and his girlfriend's daughter's furnishings were destroyed in the fire. While the fire destroyed two drillers and a truck, twenty-three other covered pieces of heavy equipment were not destroyed. Had they been destroyed, Inner Pipe's inland marine claim would have increased to $3,100,000. One of the destroyed drillers had been fully serviced and Adalberto Molina, Inner Pipe's mechanic at the time of the fire, considered it ready for use. Regarding the other driller, on which UFL focused, the record indicates the driller's bolt-on water pump needed to be repaired or replaced. There is no evidence that the pump could not be fixed or that the driller's value was irreparably compromised. Molina verified that Inner Pipe had access to a replacement pump and could make the repair in-house.

UFL spent much of the trial attacking Dailey's credibility and version of events. It attempted to discredit Dailey's claim that he did not leave the premises by presenting photographs from a nearby surveillance video purportedly showing his truck leaving. Grant Fredericks, a certified forensic video analyst testified that the truck in the photograph was not "discernibly different" from Dailey's. However, the picture's limited resolution prevented him from opining that the truck was the same. Marcello Molfino, a certified cell phone forensic examiner, opined that Dailey left his residence for approximately thirty-minutes seven hours before the fire. Molfino based this opinion in part on the fact that Dailey's cell phone connected to two different cell phone towers. However, Inner Pipe was within coverage of both towers. In addition, Molfino admitted that he failed to consider factors affecting the tower to which a cell phone would connect, including signal strength, topography, obstructions, and signal usage.

Such factors could allow a single communication to toggle between towers even when a caller's location remains fixed. Debra Pitts, Dailey's ex-wife, testified that she called the state fire marshal because of a "gut instinct and suspicion" to blame Dailey for the fire. She also claimed that he once told her that hydraulic oil is his "best friend. It burns out, burns up evidence." However, at the time she called the fire marshal, Pitts was also involved in a custody dispute with Dailey over their son. And importantly, UFL failed to propose any plausible explanation, either in its brief or at oral argument, for how Dailey could have started the fire, avoided injury, and left no trace.

Regarding Inner Pipe's financial condition at the time of the fire, Todd Lester, a forensic accountant, testified that he reviewed Inner Pipe's financial records and that it appeared to be in financial distress. Lester based his opinion on Inner Pipe's financials reflecting a net loss of approximately $795,000 in the twelve months prior to the fire, as well as a balloon payment due in September 2016 in the amount of $472,000 to Texas Timberjack on a promissory note that Lester opined Inner Pipe would be unable to pay. However, the evidence also showed that, in the five years between the fire and trial, Inner Pipe rebuilt its facility, replaced its equipment, gained new contracts without the benefit of insurance proceeds, and was still in business.

The fact finder is the sole judge of the weight and credibility of the evidence. *City of Keller*, 168 S.W.3d at 819. When the evidence is conflicting, we must presume that the fact finder resolved the inconsistency in favor of the challenged finding if a reasonable person could do so. *Id*. at 821. In this case, the trial court was entitled to give more weight to the lack of physical evidence of incendiary origin than the other circumstantial evidence upon which UFL relied. The trial court could have disbelieved Pitts's testimony that Dailey made previous comments about hydraulic oil. Even though the trial court found Dailey to be not credible, it could have placed more weight on the fact that the business survived without the insurance proceeds and found that Dailey did not start the fire.[1] We must assume that the trial court chose what testimony to disregard in a way that supports its findings. *See Hopkins,* 238 S.W.3d at 557*.* After reviewing all the evidence with the appropriate deference to the factfinder, we hold that a

---

[1] The trial court made a specific finding that Dailey was not a credible witness. However, the trial court could have considered some portions of his testimony and not others. Because we have no way of knowing which of Dailey's testimony the trial court may have credited, we address the sufficiency of the evidence without considering Dailey's testimony.

reasonable factfinder could have found that UFL failed to prove Dailey started the fire or committed arson. We overrule UFL's first and third issues.

## FRAUD AND FAILURE TO COOPERATE

In its fourth, fifth, sixth, and seventh issues, UFL attacks the trial courts findings regarding UFL's fraud and failure to cooperate defenses. Specifically, in its fourth issue, UFL urges that the following findings regarding fraud are against the great weight and preponderance of the evidence:

> 8. UFL has failed in its burden to establish that any misrepresentation by Inner Pipe was material.
> 9. UFL has failed in its burden to establish that any misrepresentation by Inner Pipe was relied upon.
> 10. UFL has failed in its burden to establish that any misrepresentation by Inner Pipe was the cause of injury to UFL.

Similarly, in its fifth issue, UFL posits that the trial court's finding that it failed to prove prejudice is factually insufficient:

> 7. UFL has failed in its burden to establish that it suffered prejudice by any alleged false statements, acts of concealment, or failures to disclose.

In its sixth and seventh issues, UFL urges that the trial court erred in not finding and concluding that the policy is void as a result of Inner Pipe's and Dailey's alleged misrepresentations.

As explained below, UFL's defenses required it to show prejudice by any of Dailey's or Inner Pipe's alleged actions. UFL groups these issues together and, in doing so, only addresses the prejudice element in its brief. Because we determine that the evidence supports the trial court's findings that UFL failed to prove prejudice, we will likewise address UFL's defenses together.

### *Applicable Law*

The elements of a fraud cause of action are (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. ***Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.***, 341 S.W.3d 323, 337 (Tex. 2011).

"Cooperation clauses in insurance contracts 'fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh.'"

8

*Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. Appx. 162, 165 (5th Cir. 2012). The duty to cooperate is "intended to guarantee to insurers the right to prepare adequately their defenses on questions of substantive liability." *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, Civil Action No. 4:09-0422, 2016 WL 5539895, at *24 (S.D. Tex. 2016). Determination of what constitutes a breach of the cooperation clause of a liability policy is usually a question of fact. *Id.* at *16; *Frazier v. Glen Falls Indem. Co.*, 278 S.W.2d 388, 391 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.). The cooperation clause is violated when the insured's conduct is not "reasonable and justified under the circumstances." *Mid-Continent Cas.*, 2016 WL 5539895, at *16. An insured who fails to make full, frank, and fair disclosure of the facts or makes false statements that materially prejudice an insurer's ability to defend the lawsuit on the insured's behalf violates her duty under the policy. *Frazier*, 278 S.W.2d at 392; *Martin v. Travelers Indem. Co.*, 450 F.2d 542, 553 (5th Cir. 1971). Further, an insured is obliged to refrain from any fraudulent or collusive act which might operate as a means of prejudice to the insurance company in the conduct of the defense against, or settlement of, the claim made against it. *Frazier*, 278 S.W.2d at 392.

To avoid coverage under a cooperation clause defense, the insurer must prove prejudice. *Progressive Cty. Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 816 (Tex. App.—San Antonio 2006, pet. denied); *see also Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173-74 (Tex. 1995). If an insurer is actually prejudiced or deprived of a valid defense by an insured's failure to cooperate, the insurer's obligations under the policy are discharged. *Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 929 (Tex. App.—Dallas 2011, no pet.).

Under Section 705.003 of the Texas Insurance Code, for the policy to be void, UFL must show that it was materially misled and was caused to waive or lose a valid defense to the policy. TEX. INS. CODE ANN. § 705.003 (West 2009); *United States Fire Ins. Co. v. Skatell*, 596 S.W.2d 166, 169 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.). An otherwise valid policy defense is lost only "when it has been abandoned or compromised in such a way that it can no longer be presented or litigated." *Stokes v. State Farm Lloyds, Inc.*, No. 14-95-01094-CV, 1997 WL 96608, at *3 (Tex. App.—Houston [14th Dist.] Mar. 6, 1997, writ denied) (op., not designated for publication).

*Analysis*

We first address UFL's argument that "Dailey's concerted effort to conceal evidence, misrepresent the facts, and to provide false testimony contributed to the denial of his claim . . . [and], as a result of that denial, United Fire is facing an extracontractual claim for bad faith." It further urges that UFL has been "prejudiced by Dailey's lack of cooperation and fraud as a matter of law by reason of the bad faith claim." However, UFL's assertion could only be true if it would have accepted coverage regardless of Dailey's alleged lack of cooperation. UFL cites no evidence that it was precluded from properly evaluating Dailey's claim. And Paul Tierce, an insurance claims expert, testified that nothing in the claim file indicated UFL was unable to complete its investigation. UFL's adjuster, Patrick Peden, agreed that UFL's denial letter impliedly conceded that the alleged lack of cooperation had not prejudiced UFL. Specifically, the letter went to great lengths to explain the basis for the denial and did not cite lack of cooperation as a basis or explain any prejudice resulting from alleged cooperation issues.

UFL further presents numerous arguments to establish prejudice. First, it cites Inner Pipe's incomplete financial records as misrepresentations. UFL states that Inner Pipe failed to disclose its money market account and CDs and points to discrepancies between the account statements and Inner Pipe's balance sheets. However, there is no evidence that these incompletions were intentional or harmful. The financial expert testified these failures could have been a simple matter of neglecting to reconcile accounts in Inner Pipe's ordinary recordkeeping. Further, it is undisputed that Inner Pipe gave UFL full access to its QuickBooks ledgers, from which it was capable of downloading all the relevant information it needed.

Second, UFL relies on a failure to disclose prior fires, but the record indicates that Inner Pipe had no prior fires to disclose. During discovery, Inner Pipe and Dailey were asked to disclose fires at any Inner Pipe related entity. Inner Pipe's counsel responded that there were none. The prior fires UFL claims were undisclosed occurred at other companies, prior to Inner Pipe's formation. One such company was solely owned by Dailey's ex-wife, Debra Pitts. Furthermore, when asked at his examination under oath (EUO) about those fires, Dailey admitted there were fires "a good while back." He answered questions about those fires and did not attempt to conceal them.

Third, UFL points to Dailey's failure to preserve his cell phone. The fire occurred in May 2016. In September, UFL requested Dailey's physical cell phone even though it already

10

had access to his complete phone records. Dailey also answered questions about his phone during his EUO. He claimed the speaker on his phone went out, so he bought a new one in July 2016. He believed all the information from his old phone would transfer to the new one. At trial, UFL claimed it wanted to examine Dailey's old phone for a "large data transfer" that occurred shortly before the fire. However, it never explained what information it expected to find, what the large data transfer was expected to show, or that Dailey's original phone would even contain the anticipated information.

Finally, UFL claims Dailey and Inner Pipe made misrepresentations in the proof of loss. Specifically, it urges Dailey claimed he reported as destroyed a Rolex watch and bear mounts that he did not actually have. However, even excluding these items, Inner Pipe's personal property claim totaled more than three times the $30,000 policy limit. Therefore, these items appear immaterial to the evaluation of the claim. Furthermore, Dailey admitted during his EUO that he mistakenly included the "bear mounts." Stacey Summers, Inner Pipe's bookkeeper, testified that she prepared the list of destroyed property at Dailey's request. She and Molina walked the scene and inventoried the items as best they could. Summers testified that she relied on Molina's memory of what existed before the fire and it is possible Molina identified some animal mount other than a bear. And Dailey testified that he had boar mounts as opposed to bear mounts. Additionally, Inner Pipe corrected its proof of loss prior to UFL's denial of the claim.

After reviewing all the evidence and giving appropriate deference to the factfinder, we hold that a reasonable factfinder could have found that UFL failed to prove it was prejudiced or injured by any alleged misrepresentations or lack of cooperation by Dailey and Inner Pipe. *See Harwell*, 896 S.W.2d at 173-74. The trial court could have reasonably found that UFL had sufficient information to deny the claim even without the information it claims to have been misrepresented or omitted. As a result, voiding of the policy was not warranted under these circumstances. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 694 (Tex. 1994) (when insurer is not prejudiced by insured's breach, breach is immaterial, and insurer is not excused from obligations under contract). Accordingly, the trial court could reasonably conclude that UFL failed in its burden of establishing its fraud and failure to cooperate defenses. We overrule UFL's fourth, fifth, sixth, and seventh issues.

## DISPOSITION

Having overruled all UFL's seven issues, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered June 30, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2023**

**NO. 12-22-00110-CV**

**UNITED FIRE LLOYDS,**
Appellant
V.
**INNER PIPE PIPELINE, LLC,**
Appellee

---

Appeal from the 145th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C1733258)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed** and that all costs in this cause expended be adjudged against Appellant, **UNITED FIRE LLOYDS**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*